J-S41022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| J.V.S. | |
| Appellant | No. 943 MDA 2014 |

Appeal from the Judgment of Sentence May 6, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001031-2012

BEFORE: ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 06, 2015**

J.V.S. appeals from the judgment of sentence, imposed by the Court of Common Pleas of Cumberland County, after a jury found him guilty of corruption of minors[1] and indecent assault.[2] Upon careful review, we affirm.

The trial court has set forth the facts of this matter as follows:

The victim . . . M.S., [J.V.S.]'s biological daughter, was born in January 1994 and lived with her mother for most of her life, having no real relationship with [J.V.S.], until after she moved in with him, her step-mother, Heather, and her two half-brothers, Z.S. and B.S., in April of 2011. M.S. had not been enrolled in school at her mother's and was enrolled in 9th grade by [J.V.S.]. As with many teens, M.S. was on bad terms with her step-

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6301(a)(1)(i).

[2] 18 Pa.C.S. § 3126(a)(1).

mother, Heather, and her relationship with [J.V.S.] only progressed from "all right" to "better than before."

In July of 2011, M.S. testified that [J.V.S.] and Heather began to fight, which worsened everyone's relationships and led to the first allegation of corruption of minors — [J.V.S.]'s inappropriate sexual discussions with his daughter. In essence, after "Heather didn't give him sex anymore," [J.V.S.] asked his daughter to find him girls because "he wanted to sleep with them." Not surprisingly, she refused because it was "just gross" to set up her father with 18-26 year old girls; however, [J.V.S.] persisted in his requests. Following these rebuffs, [J.V.S.] started asking M.S. to sleep with him. M.S. poignantly related that when she told him "no [you're] my dad," [J.V.S.] responded, "I don't see you as my daughter."

Sadly, [J.V.S.]'s overtures to his daughter persisted until December 5, 2011, when they culminated in conduct giving rise to the indecent assault charge. Specifically, after sending M.S. to her room to talk to her, he renewed his amorous desires, telling M.S. "he was in love with [her]." This penultimate advance was interrupted by a text message from M.S.'s cousin, Amanda, inviting her to go to the Sheetz store, which [J.V.S.] permitted.

During the Sheetz trip, after Amanda pressed M.S. as to why she did not want to go home, M.S. tearfully and nervously informed Amanda of her father's actions. M.S. called her mother and another cousin at that time to inform them too. With no plan to go elsewhere, M.S. returned home, placed a fork under her pillow for protection and planned to use her phone to record any interaction with [J.V.S.]. [J.V.S.] did return to her room and, in defiance of M.S.'s verbal and physical resistance, placed his hand on her leg and eventually on her vagina over top of her clothing, returning his hand to her vagina after she would kick it away. [J.V.S.]'s efforts ceased when he heard Heather speaking to a friend in the next room, at which time he jumped up and feigned as if he was talking to M.S. about school.

M.S. informed her school counselor of the sexual advances and assault the next day and did not return home; instead, Amanda went to [J.V.S.]'s house and retrieved all of M.S.'s possessions except her cell phone. The cell phone was eventually obtained by Corporal Kenneth Tallman of the Pennsylvania State Police on December 15, 2013; however, it did not have a SIM card, and

consequently, no data or images could be recovered. [J.V.S.] admitted to Cpl. Tallman that he had seen texts on the cell phone that included allegations of his misconduct, all of which he denied and suggested that M.S. was upset because she was doing poorly in school and [J.V.S.] was "getting on her about homework."

Trial Court Opinion, 9/30/14, at 6-8 (citations omitted).

On March 19, 2014, at the conclusion of a one-day trial, a jury convicted J.V.S. of corruption of minors and indecent assault. On May 6, 2014, J.V.S. was sentenced to 16 to 60 months' incarceration. J.V.S. filed a timely post-sentence motion, which the trial court denied on September 30, 2014. On October 9, 2014, J.V.S. filed a notice of appeal.

On appeal, J.V.S. challenges the sufficiency of the evidence supporting his convictions for corruption of minors and indecent assault.

Our standard of review of sufficiency claims is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Section 6301 of the Crimes Code defines corruption of minors, in relevant part, as follows:

**§ 6301. Corruption of minors.**

**(a) Offense defined.—**

(1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age[.]

18 Pa.C.S. § 6301(a)(1)(i).

J.V.S. claims the evidence was insufficient to prove beyond a reasonable doubt that he corrupted the morals of his 17-year-old daughter. M.S. testified that J.V.S. told her that her stepmother "didn't give him sex anymore," so he asked M.S. to "find him girls. . .to sleep with [him]." N.T. Trial, 3/19/14, at 39. J.V.S. argues that because it is not illegal to have an extramarital affair, and that the "girls" J.V.S. was interested in were between the ages of 18 and 26, that this discussion between father and daughter does not constitute corruption of minors. *Id.* at 40; Appellant's Brief, at 10. We disagree.

The scope of the corruption of minors statute is very broad in order to protect the welfare of children. This Court has stated:

In deciding what conduct can be said to corrupt the morals of a minor, "[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it. Furthermore, corruption of a minor can involve conduct towards a child in *an unlimited number of ways*. The purpose of such statutes is basically protective in nature. These

statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

*Commonwealth v. Slocum*, 86 A.3d 272, 278-79 (Pa. Super. 2014) (citing *Commwealth v. Decker*, 698 A.2d 99, 101 (Pa. Super. 1997) (internal citations omitted) (emphasis added)).

Here, J.V.S.'s conversation with M.S. about his sexual relations with her stepmother, and his proposal for M.S. to find him other sexual partners, falls within the scope of corrupting the morals of a minor. Further, after M.S. refused to find other women for J.V.S. to have sex with, J.V.S. propositioned M.S. for sex. N.T. Trial, 3/19/14, at 40. Therefore, we agree with the trial court that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain the corruption of minors conviction. *Lynch*, *supra*.

Next, J.V.S. claims that the evidence was insufficient to sustain his conviction for indecent assault.

Section 3126 of the Crimes Code defines indecent assault as follows:

**§ 3126. Indecent assault.**

**(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent[.]

18 Pa.C.S. § 3126(a)(1).

The sole basis for J.V.S.'s argument is that M.S. returned to J.V.S.'s house on the night of the assault and did not report the assault to the authorities immediately.[3]  M.S. testified that on the night of December 5, 2011, J.V.S. told her that that he was in love with her, touched her vagina on top of her clothing, and continued to try to touch her when she kicked his hand away.  N.T. Trial, 3/19/14, at 43, 50-51.  The trial court found that M.S. was credible when she testified that J.V.S. touched the clothing covering her vagina without her consent.  Therefore, we agree with the trial court that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain the indecent assault conviction. ***Commonwealth v. McDonough***, 96 A.3d 1067, 1069 (Pa. Super. 2014) (finding that the testimony of a sexual assault victim was sufficient to affirm a conviction for indecent assault when the factfinder believed the victim was credible).

_____

[3] J.V.S.'s argument essentially attacks the credibility of M.S., and therefore, his claim challenges the weight of the evidence.  However, J.V.S. did not raise this claim before the trial court, and accordingly it is waived pursuant to Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015