J-S05021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD SYLVESTER STOUGH, | |
| Appellant | No. 1198 MDA 2015 |

Appeal from the Judgment of Sentence October 20, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001263-2014, CP-67-CR-0005333-2013, CP-67-CR-0007299-2013, CP-67-CR-0007301-2013

BEFORE:  BENDER, P.J.E., SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 22, 2016**

Appellant, Richard Sylvester Stough, appeals *nunc pro tunc* from the October 20, 2014 judgment of sentence of twenty-five to fifty-five months of imprisonment, following his conviction at a bench trial of indecent assault, stalking, and intimidation of a witness or victim.  Appellate counsel has filed a petition to withdraw his representation and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), which govern a petition to withdraw from representation on direct appeal.  After review, we grant counsel's petition to withdraw, and we affirm the judgment of sentence.

---

[*]  Retired Senior Judge assigned to the Superior Court.

The trial court summarized the facts and procedural history as follows:

On June 27, 2013, Kristen Stambaugh was recovering from a recent surgery in her home in York County, Pennsylvania when she heard a knock at her door. She answered the door and it was her neighbor, the Appellant. He stated that he and his wife had an argument and that he was going to leave the house, but that he wanted to exchange numbers with Ms. Stambaugh. The Appellant stated his reason for wanting to exchange numbers was so Ms. Stambaugh could watch his house while he was away. Ms. Stambaugh agreed, but instead of letting the Appellant inside her home, she closed the door while she went into the kitchen to get pen and paper. She heard her front door open and the Appellant entered her kitchen. He pinned her against her sliding glass door and began touching her buttocks and kissing her neck. During the entire encounter, Ms. Stambaugh was attempting to push the Appellant off of her and was screaming "no."

Eventually, Ms. Stambaugh was able to get her arms free and she pushed the Appellant out of the door. She called her friend Karen, who came over and encouraged Ms. Stambaugh to call the police. Officers responded to Ms. Stambaugh's house and took a report. Over the next three months the Appellant left notes on Ms. Stambaugh's door or car, stood outside watching her, and even showed up at her place of employment. All of these incidents were reported to police who repeatedly told the Appellant to stay away from Ms. Stambaugh. It is this behavior that led to the charges in the Appellant's other cases.

Eventually the Appellant was incarcerated on these charges. In November of 2013, Ms. Stambaugh received a letter from York County Prison. Ms. Stambaugh immediately took the letter to the police department; she did not even open it. It was this letter that led to the witness intimidation charge. In the letter, the Appellant offers the victim an invitation to Thanksgiving dinner and food in exchange for her dropping the charges against him.

Due to all of the events that had transpired after the June 27, 2013, incident, Ms. Stambaugh testified that she no longer felt safe and this led her to move. Ms. Stambaugh testified that she and the Appellant had always been friendly, typical

neighborly chitchat, but she never thought there were any issues between the two.

The Appellant did testify, however, his testimony was essentially denial of all charges. He began his testimony by stating that he was "here on false charges." With respect to the initial incident with Ms. Stambaugh, the Appellant stated that he did go to her house to exchange numbers, but nothing inappropriate occurred; they exchanged numbers and that was it. In fact, the Appellant denied ever being in Ms. Stambaugh's house. He denied writing notes and leaving them on Ms. Stambaugh's car or front door. However, he did admit to writing her the note from the prison. Although he was aware that he was not supposed to have any contact with Ms. Stambaugh he did not know that also included letters.

After hearing all of the testimony, we found the Appellant guilty on most of the charges against him. The only evidence the defense offered to discredit Ms. Stambaugh was the Appellant himself, and quite frankly, we did not believe much of his testimony. We sentenced the Appellant on October 20, 2014, and this timely appeal followed.

Trial Court Opinion, 7/28/15, at 2–4 (internal citations to the record omitted).

Appellant filed a timely notice of appeal on November 19, 2014. Both the trial court and Appellant complied with Pa.R.A.P. 1925. On May 1, 2015, this Court dismissed the appeal for failure to file a brief. On May 14, 2015, Appellant filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. The PCRA court held a hearing on June 25, 2015, and on July 9, 2015, granted Appellant permission to appeal *nunc pro tunc*. Appellant filed a notice of appeal on July 13, 2015. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Before we address the questions raised on appeal, we must resolve appellate counsel's request to withdraw. *Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Id.* at 1032 (citation omitted).

In this case, counsel has satisfied those directives. Within the petition to withdraw, counsel averred that he conducted a conscientious examination of the record, including all notes of testimony. Following that review, counsel concluded that the present appeal is wholly frivolous. Counsel sent to Appellant a copy of the *Anders* brief and petition to withdraw, as well as a letter, a copy of which is attached to the motion. In the letter, counsel advised Appellant that he could represent himself or retain private counsel.

We now examine whether the brief satisfies the Supreme Court's dictates in *Santiago*, which provide that:

> in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for

concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Cartrette*, 83 A.3d at 1032 (quoting *Santiago*, 978 A.2d at 361).

Counsel's brief is compliant with *Santiago*. It sets forth the factual and procedural history of this case and outlines pertinent case authority. Counsel identifies four issues, as follows:

1. Whether the Commonwealth failed to present sufficient evidence of Indecent Assault that Appellant's unwanted touching of the victim was for the purpose of sexual gratification?

2. Whether the Commonwealth failed to present sufficient evidence of Stalking that Appellant intended to place the victim in reasonable fear of bodily injury or to cause substantial emotional distress by his communications?

3. Whether the Commonwealth presented insufficient evidence of Appellant's intent to intimidate the victim into withdrawing charges?

4. Whether an offer of de minimis pecuniary gain is sufficient to trigger culpability under the intimidation of witness statute?

*Anders* Brief at 5.

The issues identified in the *Anders* brief are all related to the sufficiency of the evidence supporting Appellant's convictions. In reviewing a sufficiency challenge, "we must decide whether the evidence admitted at trial, and all reasonable inferences drawn therefrom in favor of the Commonwealth, as verdict winner," are sufficient to support all elements of the offense. *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015).

The trial court, sitting as the finder of fact, is free to believe some, all, or none of the evidence. *Commonwealth v. Cousar*, 928 A.2d 1025 (Pa. 2007); *Commonwealth v. Tejada*, 107 A.3d 788, 792–793 (Pa. Super. 2015). Moreover, the Commonwealth may sustain its burden of proof by wholly circumstantial evidence. *Commonwealth v. Diggs*, 949 A.2d 873 (Pa. 2008); *Commonwealth v. Vogelsong*, 90 A.3d 717 (Pa. Super. 2014), *appeal denied*, 102 A.3d 985 (Pa. 2014). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Commonwealth v. Rogal*, 120 A.3d 994 (Pa. Super. 2015).

Appellant first asserts that the evidence was insufficient to convict him of indecent assault. Appellant was convicted of indecent assault pursuant to 18 Pa.C.S. § 3126(a)(1). A person is guilty of indecent assault if he "has indecent contact with the complainant . . . without the complainant's consent." 18 Pa.C.S. § 3126(a)(1). The Crimes Code defines indecent contact as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101.

After review, we conclude the Commonwealth presented sufficient evidence of indecent assault. Kristen Stambaugh [also "the victim"] testified that after Appellant entered her home and pinned her against a sliding glass door, he began touching her buttocks and kissing her neck. N.T., 6/13/14, at 10. The victim further testified that while Appellant was touching her, she

- 6 -

was resisting and screaming, "No, stop, get off, get out, yelling at him the entire time." *Id*. at 11. The testimony of the victim, standing alone, is sufficient to convict in sex offense prosecutions. *In Interest of J.R.*, 648 A.2d 28 (Pa. Super. 1994).

Further, Ms. Stambaugh stated that Appellant told her, "You know you want this." N.T., 6/13/14, at 11. This comment clearly encompasses an element of sexual desire or gratification that is sufficient to establish a sexual component to Appellant's actions. *See Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (factfinder is free to infer defendant's comments that victim was sexy and "he would like to do some things to her" revealed that his intimate touching was done for purpose of arousing or gratifying sexual desire such that evidence was sufficient to support conviction for indecent assault). There was sufficient evidence at trial to support the conviction for indecent assault.

Appellant also assails the sufficiency of the evidence to support his conviction of stalking. In order to sustain a conviction for stalking under 18 Pa.C.S. § 2709.1, the Commonwealth must prove beyond a reasonable doubt that the defendant engaged in a course of conduct, repeatedly committed acts toward another person, or repeatedly communicated to another person under circumstances which demonstrate or communicate an intent to either place the person in reasonable fear of bodily injury or cause substantial emotional distress to the person. Appellant argues that his

conviction is infirm because the Commonwealth failed to prove that he intended to cause substantial emotional distress to the victim.

Appellant was convicted of two counts of stalking. The trial court explained as follows:

> With respect to case CR-7299-2013, the testimony presented at trial showed the following: The victim testified that after the incident and after she had spoken with the police, the Appellant came back to her house. N.T. 6/13/2014 at 12. She said that he knocked on the door, but she refused to open it; however, she could hear him apologizing. Id. at 12-13. She advised the Appellant that she was calling the police again and he left. Id. at 13. The victim testified that in days after the incident she began receiving notes on her front door and car. Id. at 14. The victim testified that every time she would leave her house the Appellant would be standing outside of his house. Id. at 16-17. In one particular incident she observed the Appellant sitting in his truck staring at her residence; she called the police and Officer Shaun Goodman arrived. Id. at 16-17.
>
> Officer Shaun Goodman testified that he was dispatched to the victim's house on June 28, 2013, the day after the indecent assault. N.T. 6/13/2014 at 39. When he arrived he saw the Appellant sitting in his truck looking at the victim's residence. Id. at 40. Officer Goodman approached the Appellant and reminded him that he was to have no contact with the victim; the Appellant acknowledged that he was not supposed to have contact with her. Id. Later that same day Officer Goodman was called back to the residence because the Appellant had left a voicemail on the victim's phone. Id. at 41.
>
> As we stated at the time we found the Appellant guilty of Stalking in case CR-7299-2013, one incident standing alone would not be sufficient to convict the Appellant; however, the combination of the voicemail, staring at the victim from across the street, and the fact that the Appellant returned to the victim's house after the June 27th incident did establish a course of conduct as defined in the statute. N.T. 6/13/2014 at 73-74. Based on the timing of these incidents we determined that the Appellant did intend to cause the victim substantial emotional distress. Id. at 74.

In case CR-7301-2013, the Appellant showed up to the victim's place of employment[1] and attempted to gain information about her bus route. Terry Mundy, the victim's co-worker, testified that when she pulled into work on September 10, 2013, she noticed a blue PT Cruiser in the parking lot. N.T. 6/13/2014 at 43. She thought this was strange because she is always the first person at work. Id. Ms. Mundy testified that she saw a man, who she identified as the Appellant, sitting in the car writing on a tablet. Id. at 43-44. After opening the office Ms. Mundy decided to go out and ask the Appellant if he needed help. Id. at 44. The Appellant said he was looking for Kristen and that he needed to talk to her because he and his wife had split up. Id. at 44-45. Ms. Mundy told the Appellant she would not give out the victim's bus route, and the Appellant drove away a short time later. Id. at 45. Ms. Mundy was aware of what was going on with the victim, and after her encounter with the Appellant she called the police. Id. at 46.

Billie Jo Caudill, another one of the victim's co-workers, testified that on September 2013, she was driving her normal bus route when she noticed a blue PT Cruiser following her. N.T. 6/13/2014 at 47-48. When she was at a stop sign she noticed the Appellant waving his arms in an effort to get her attention. Id. at 48. She was also aware of what was going on between the Appellant and victim, so she immediately reported the incident; shortly thereafter the police arrived. Id. at 48-49.

When we found the Appellant guilty of Count 1 Stalking in 7301–2013, we noted that the Appellant's appearance at the victim's place of employment and his attempt to gain information about her and follow her was just "another act or course of conduct constituting the crime of stalking." N.T. 6/13/2014 at 75. Although the Appellant ended up following the wrong person, he clearly intended to follow the victim and he made substantial steps in doing so. Id. at 76. Thus, we found him guilty of Count 1 Stalking.

We think that the evidence presented by the Commonwealth was sufficient to prove that the Appellant

_____

[1] Ms. Staubaugh testified that she drove a school bus. N.T., 6/13/14, at 14.

intended to place the victim in reasonable fear of bodily injury or to cause substantial emotional distress. When asked what effect this entire series of events has taken on her the victim responded, "I watch my back when [I] come out of the house now. I since have—have moved from my residence. I'm no longer there as of last week. I just—don't feel safe anymore." N.T. 6/13/2014 at 26. She was asked why she moved and she responded that she knew the Appellant would not be incarcerated forever, and that he would eventually get out of prison. Id. The victim stated, "I just want it [sic] to be left alone." Id.

On the other hand, the Appellant did admit to being at the victim's home on June 27th and to exchanging phone numbers, but he denied everything else. N.T. 6/13/2014 at 57-58. He denied ever being in the victim's home. Id. at 58. He denied coming back to the victim's house later on the day of June 27th. Id. at 59. He denied leaving handwritten notes on the victim's front door or car. Id. at 59-60. However, the Appellant did admit to sending the victim a letter from the prison. Id. at 60. The Appellant denied leaving a voicemail on the victim's answering machine. Id. at 62. He denied staring at the victim's home from his truck. Id. at 63. He denied showing up at the victim's place of employment and trying to get information about her bus route. Id. at 64. Finally, the Appellant denied following [the] school bus. Id. at 64-65.

As we noted at the Appellant's bench trial, we simply did not believe his version of events. Furthermore, there was no reason for this [c]ourt to reject any of the victim's testimony or the testimony of her co-workers. Based on the evidence, we concluded that the Appellant's actions after the June 27th physical assault were intended to cause the victim substantial emotional distress.

Trial Court Opinion, 7/28/15, at 8–11 (footnote omitted).

Contrary to Appellant's position, this evidence was clearly sufficient to support a finding that he intended to place the victim in reasonable fear of bodily injury and to cause her substantial emotional distress. Appellant repeatedly appeared at her home and place of business against her wishes,

making it clear that he was watching her. Given these facts, the factfinder was free to infer that Appellant possessed the requisite state of mind for the offense charged and to reject his self-serving testimony that he never intended to frighten Ms. Stambaugh. Accordingly, no relief is due on this issue.

We address the third and fourth issues in tandem. These claims aver that the evidence was insufficient to support Appellant's conviction of intimidation of a witness or victim. Appellant was convicted of violating 18 Pa.C.S. § 4952(a)(3), which provides as follows:

> **(a) Offense defined.**--A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> * * *
>
> (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S. § 4952(a)(3).

The offense was graded as a felony in the third degree. 18 Pa.C.S. § 4952(b)(1)(ii). Under section 4952(b)(4), the offense of intimidation of a witness is a felony of the third degree "in any other case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection." 18 Pa.C.S. § 4952(b)(4). The predicates for grading under this section are set forth in section 4952(b)(1), which states "[t]he actor

employs force, violence or deception or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge upon any other person." 18 Pa.C.S. § 4952(b)(1)(i).

We consider Appellant's assertion that the Commonwealth failed to present sufficient evidence of Appellant's intent to intimidate the victim as well as his claim that the evidence of a *de minimis* pecuniary gain does not permit culpability under the statute. **Anders** Brief at 19. The basis for this charge was a letter Appellant sent from prison to Ms. Stambaugh. The letter read as follows:

Hi neighbor,

I have been wanting to write this letter to you for weeks, But have been putting it off because of how you might react to it & turn me in again. But [G]od's Big Bible says in Matthew 5:43-48 Love they neighbor & help them. You are the 5th neighbor my Dear wife Marie & I have helped out in Food since we moved in our House Memorial Day 2002 I guess you just don't appreciate help from [G]od's people and servants. It is because of you I am sitting in jail. If I did anything wrong by doing what [G]od's Bible says to do for your neighbor, then I guess I am wrong. But if you go to the cops again Read your Bible & do me a favor & take the Bible & this letter with you & tell the truth & Please do yourself [a] favor also Don't lie about me. Please do me & my Dear wife a Bigger favor go to cops & have charges dropped against me so [I] could be with my Dear Family for Thanksgiving weekend for Big Dinner we will even invite you & those 2 Boys over for Turkey Dinner. Please OK. We will also give you more food for Boys & you. Thank you & may [G]od Bless all of you.

Thanks neighbor
Dick Stough Jr. & wife Marie for
45 years and we plan to be together for 45 more years.

- 12 -

> P.S. also please Read in your
> Bible & if you don't have a Bible
> go over to our House and my Dear wife
> will give you a Holy Bible to Read

Commonwealth Exhibit 6 (emphasis in original); N.T., 6/13/14, at 25, 56.

The trial court stated the following regarding the sufficiency of the evidence supporting Appellant's conviction of intimidation of a witness or victim:

> The above letter clearly does not threaten the victim, Ms. Stambaugh, with bodily harm; however, a threat is not required under the statute. *Commonwealth Brachbill*, 555 A.2d 82, 84-86 (Pa. 1989) (superseded by statute on other grounds).[2] As the *Brachbill* Court noted, it was not the legislature's intent to have the word "intimidate" have its ordinary meaning.[9] Id. at 85-86. The legislature's inclusion of subsection (b) clearly shows that the word intimidate as used in the statute includes "*any offers of benefit* with the intent to "obstruct, impede, impair, prevent or interfere with the administration of criminal justice," and that such conduct would constitute a felony of the third degree." Id. at 86; *see also* Pa.C.S.A. § 4952(b)(1)(ii) (emphasis added). By

_____

[2] The holding in **Commonwealth Brachbill**, 555 A.2d 82 (Pa. 1989), was recently clarified in **Commonwealth v. Doughty**, 126 A.3d 951 (Pa. 2015). The **Doughty** Court noted that **Brachbill** did not vitiate the need to prove intimidation but stated, "Where **Brachbill** goes awry is in suggesting a pecuniary benefit, in and of itself, comprises intimidation. Such an inducement may or may not intimidate, but the legislature replaced the element of inducement with the element of intimidation." **Doughty**, 126 A.3d at 957. Our Supreme Court explained that, "[w]hether an offer of a pecuniary or other benefit contains sufficient indicia of intimidation is to be determined by the fact finder and assessed under the totality of the circumstances, cognizant that proof of manifest threats is not required." **Id**. Finally, the **Doughty** Court admonished, "Insofar as **Brachbill** is read to mean pecuniary inducement **alone** will suffice without proof of intimidation, it is disapproved." **Id**. (emphasis added). Herein, the trial court's analysis comports with the **Doughty** clarification.

- 13 -

the Appellant's own admission he had the required intent. He testified that he wrote the letter from prison "Because I wanted her to drop the charges . . . Because was not guilty of it." N.T. 6/13/2014 at 60. In an effort to get the victim to drop the charges, the Appellant offered her a benefit—food. Id. at 61.

> [9] Typical synonyms for "intimidate" include: frighten, scare, coerce, bully, and threaten.

Although food may not be the customary way of intimidating a victim, it is offering the victim a benefit in return for dropping the charges. The Appellant argues that the offer of food was a "*de minimus* pecuniary gain" and is therefore not "sufficient to trigger culpability under the intimidation of witness statute." Def. 1925(b), 2/9/2015. We do not agree. First, the statute does not limit itself to only pecuniary, or financial, gain; it also includes other benefits. See 18 Pa.C.S.A. 4952(b)(1)(ii). Further, as previously stated, 4952(b)(1)(ii) does require any level of pecuniary gain or benefit—it qualifies both pecuniary gain and other benefit with the word "any." In our mind this means that even the slightest benefit, financial or otherwise, would be enough to trigger culpability as long as the requisite intent was present.

Therefore, we believe the Commonwealth did present sufficient evidence to prove that the Appellant intended to offer the victim a benefit in order to get her to drop the charges against him, which would have prevented or interfered with the administration of justice.

Trial Court Opinion, 7/28/15, at 12–13.

All that was required here was an attempt to intimidate.[3]

**Commonwealth v. Doughty**, 126 A.3d 951 (Pa. 2015) (holding evidence

---

[3] In addition, in **Commonwealth v. Felder**, 75 A.3d 513 (Pa. Super. 2013), this Court explained that the grading of the crime of intimidation of a witness is based upon the highest degree of the offense charged in the case. **Id**. at 517. Instantly, the court convicted Appellant under section 18 Pa.C.S.
*(Footnote Continued Next Page)*

was sufficient to support conviction of intimidation of spouse-witness where defendant told wife not to testify, and if she failed to do so, he would go to jail for two years, starve, and lose everything); *Commonwealth v. Lynch*, 72 A.3d 706, 711 (Pa. Super. 2013) (sufficient evidence supported intimidation-of-witness conviction where defendant "sought to frustrate the administration of justice by offering to give the Commonwealth's chief witness pecuniary and other benefits if she agreed to refrain from testifying against him."). Here, Appellant admonished the victim, "It is because of <u>you</u> I am sitting in <u>jail,</u>" and he instructed her to go to the police and drop the charges so that he could get out of jail and enjoy Thanksgiving dinner with his family. Commonwealth Exhibit 6 (emphasis in original); N.T., 6/13/14, at 25, 56. The trier of fact could find that Appellant attempted to intimidate his accuser, Ms. Stambaugh, and that he did so intending "or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice." *Commonwealth v. Collington*, 615 A.2d 769, 770 (Pa. Super. 1992). This issue lacks merit.

We have independently reviewed the record in order to determine if counsel's assessment about the frivolity of the present appeal is correct. *See Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (after determining that counsel has satisfied the technical requirements of

*(Footnote Continued)* ———————————

§ 4952, graded as a third-degree felony. Thus, the grading of his offense also complied with the rule announced in *Felder*.

- 15 -

***Anders*** and ***Santiago***, this Court must conduct an independent review of the record to determine if there are additional, non-frivolous issues overlooked by counsel). After review of the issues raised by counsel and our independent review of the record, we conclude that an appeal in this matter is frivolous. Accordingly, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/2016