J-S53005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAYVON L. LASSITER-MORRIS | : | |
| | : | |
| Appellant | : | No. 3955 EDA 2017 |

Appeal from the Judgment of Sentence August 14, 2017
in the Court of Common Pleas of Bucks County
Criminal Division at No.:  CP-09-CR-0001051-2017

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 22, 2018**

Appellant, Jayvon L. Lassiter-Morris, appeals *nunc pro tunc* from the judgment of sentence imposed following his jury conviction of two counts each of intimidation of a witness and criminal solicitation to intimidate a witness.[1] We affirm.

We take the following facts and procedural history from our independent review of the certified record.  On April 10, 2016, in the underlying case, police arrested Appellant and charged him with aggravated assault for shooting his then-girlfriend, Gabrielle Moore, in the leg.  Appellant was not able to make bail, and remained incarcerated at the county facility to await trial scheduled for January 5, 2017.

_____

[1] 18 Pa.C.S.A. §§ 4952(a)(3), (a)(5), and 902(a), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

During the months before trial, Detective Lawrence Leith met with Ms. Moore several times, and she was very emotional and appeared very concerned about the process. Detective Leith learned that Appellant was in regular contact with Ms. Moore, and he obtained the prison recordings of the phone calls between Appellant and Ms. Moore from December 12, 2016 through January 26, 2017.

Notably, during a phone call on December 30, 2016, Ms. Moore expressed concern about her receipt of a court order requiring her to testify in the aggravated assault case against Appellant. (*See* Commonwealth's Exhibit 3, at 3). Appellant told her that the order was "fake as shit" and asked her "[w]hat are they going to charge you with?" if she did not comply with the order. (*Id.*). When Ms. Moore informed Appellant that she would be charged with contempt of court, Appellant repeatedly told her: "You do not have to go." (*Id.* at 4). Appellant became increasingly frustrated, and advised her that "[a]in't shit gonna happen[]" if she did not appear, and "[a]ll they're going to do is throw that shit out." (*Id.* at 6). Appellant told Ms. Moore that "all [she] gotta do is leave [un]til that shit over with." (*Id.* at 7). Ms. Moore reassured Appellant that she would not "get [him] in trouble" and Appellant reiterated that he "[knew she was] not coming." (*Id.* at 7-8; *see id.* at 10). Ms. Moore then acknowledged that the relationship had deteriorated, and that he was "trying to use [her] now[.]" (*Id.* at 11; *see id*. at 10, 13-16).

Appellant then made a second phone call to an unidentified male friend, expressed that he was under stress because of the case, and gave him Ms.

Moore's telephone number. (**See** N.T. Trial, 8/02/17, at 14-15; Commonwealth's Exhibit 4, at 4-6). Appellant urged his friend to talk to Ms. Moore as soon as possible, to refer to her by her nickname "Gab," and tell her:

> . . . . I miss [Appellant] a lot, you know? I ain't trying to see him do all that time, you know? [Appellant] told me about the situation. Like, you know, just fall back. You know? . . .
>
> . . . you gotta come but at the end of the day, you can tell them you don't want to say nothing. You know, just tell her, like, she could fall back, don't say nothing. You know, tell her she ain't got to say nothing if she come, like.
>
> \* \* \*
>
> . . . let her know, bro—like, I need a couple of niggas to talk to her. Let her know . . . y'all need me[.] . . . Just talk positive. . . be chill. . . .
>
> \* \* \*
>
> . . . You know, you talk to her . . . tell her I said what's up, you know, stay straight. . . .

(Commonwealth's Exhibit 4, at 8-9, 13, 23; **see id.** at 3). Appellant's friend repeatedly advised that he would definitely talk to Ms. Moore. (**See id.** at 12, 14).[2]

Appellant proceeded to trial in the instant case on August 1, 2017. The parties stipulated that, if called to testify as a witness, Ms. Moore would testify that she was the victim in the underlying aggravated assault case against

---

[2] Appellant was found guilty in the underlying case. His appeal from the judgment of sentence imposed in that case is currently pending before this Court.

Appellant; that she testified as a witness for the Commonwealth at trial in that case, consistent with its theory of the case; and that she was not intimidated by Appellant's phone calls. (*See* N.T. Trial, 8/02/17, at 21-22).

On August 2, 2017, the jury found Appellant guilty of the above-mentioned offenses. On August 14, 2017, the trial court sentenced him to an aggregate term of not less than four nor more than eight years' incarceration. Appellant failed to file a timely notice of appeal after the trial court denied his post-sentence motion on October 2, 2017. The trial court granted Appellant's unopposed motion to reinstate his direct appeal rights *nunc pro tunc* on November 29, 2017. This timely appeal followed.[3]

Appellant raises the following issues for our review:

A. Was the evidence presented at Appellant's jury trial insufficient to sustain the verdict of guilty to intimidation of a witness, where there was nothing intimidating in nature about the conversations between the complainant and Appellant discussing her testimony and [appearing] at trial as the complainant was not intimidated and did not testify at trial consistent with the Commonwealth's theory of the case?

B. Was the evidence presented at Appellant's jury trial insufficient to sustain the verdict of guilty to solicitation to intimidate a witness, where there was no evidence that the complainant received such a communication from another person and that there was nothing intimidating in nature about the request to have a third party speak to the complainant?

(Appellant's Brief, at 4) (most capitalization omitted).

_____

[3] Appellant timely complied with the trial court's directive to file a concise statement of errors complained of on appeal on December 28, 2017. The court entered an opinion on January 10, 2018, and filed a supplemental opinion on March 5, 2018. *See* Pa.R.A.P. 1925.

- 4 -

Both of Appellant's issues challenge the sufficiency of the evidence supporting his conviction. Preliminarily, we observe that Appellant has waived his sufficiency claims by failing to identify the element or elements upon which he alleges that the evidence was insufficient in his Rule 1925(b) statement. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa. Super. 2015) (finding appellant waived challenge to sufficiency of evidence where his vague Rule 1925(b) statement did not specify which element(s) of relevant crimes Commonwealth failed to prove beyond reasonable doubt). Instead, Appellant's concise statement misidentifies the criminal solicitation conviction as conspiracy, and generically asserts that: "Appellant believes and therefore avers that there was not sufficient evidence to support the convictions for intimidation of a witness and conspiracy to commit intimidation of a witness." (Rule 1925(b) Statement, 12/28/17, at 1 ¶ 1). Therefore, Appellant's issues on appeal are waived.

Moreover, they would not merit relief.

The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing Appellant's sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Edwards*, 177 A.3d 963, 969–70 (Pa. Super. 2018) (citations and quotation marks omitted).

Here, Appellant contends that the evidence was insufficient to convict him of intimidation of a witness and criminal solicitation to intimidate a witness. (*See* Appellant's Brief, at 10-15). While Appellant concedes that he had many conversations with Ms. Moore while awaiting trial in the aggravated assault case, he explains that this was because they still were linked romantically. (*See id.* at 12). Appellant argues that none of his conversations with Ms. Moore were intimidating in nature; that Ms. Moore was not actually intimidated; and that she appeared as a Commonwealth witness at his trial and testified consistent with its theory of the case. (*See id.* at 10-12). Appellant further claims that the recorded conversation with his unidentified male friend "involved the mere inducement of the complainant not to appear and testify and not intimidation[,]" and that "[n]o threats or violence or force were ever discussed[.]" (*Id.* at 15). These arguments would merit no relief.

The Crimes Code defines the offense of intimidation of a witness in pertinent part as follows:

> **(a) Offense defined.—**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> *       *       *

- 6 -

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

* * *

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

18 Pa.C.S.A. § 4952(a) (3), (5).

[A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary *mens rea*, "attempts" to intimidate a witness or victim. . . . The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice. . . . The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016) (citation omitted).

Additionally, a person "may purposely intimidate in any number of ways, without manifesting bullying or fearsome words, and if they do so with the requisite *mens rea*, the crime is made out." *Commonwealth v. Doughty*, 126 A.3d 951, 957 (Pa. 2015). "[T]he statute proscribes an attempt to intimidate a witness into withholding evidence, without reference to whether the attempt actually succeeds." *Commonwealth v. Lynch*, 72 A.3d 706, 710 (Pa. Super. 2013) (*en banc*), *appeal denied*, 86 A.3d 232 (Pa. 2014).

As such, there may be instances where a plea for compassion and forgiveness by a physically abusive companion, partner, or other relation may appear pitiful and even prove unsuccessful in the end, but was, given the dynamics of the relationship at hand,

reasonably calculated by the actor to deliver the kind of veiled threat that has bent the witness to his will in the past.

*Id.*

With regard to the offense of criminal solicitation,

[a] person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

18 Pa.C.S.A. § 902(a).

Instantly, the trial court addressed Appellant's sufficiency claims as follows:

. . . [I]t is clear that the evidence was sufficient to convict Appellant on the charges of Solicitation to Intimidate a Witness and Intimidation of a Witness. Appellant expressed a number of times his desire not to have Ms. Moore testify, and stated in plain terms that he doubted her ability to repeat the version of the facts which he believed. That Appellant stressed several times throughout the second phone call that he wanted the recipient of the call to convince Ms. Moore to "fall back" demonstrates Appellant's mindset: having heard from Ms. Moore that she was not going to avoid testifying lest she be held in contempt of court, Appellant sought out a third party who would be able to convince Ms. Moore not to testify. Appellant knew that preventing Ms. Moore from testifying would impede the Aggravated Assault case against him, as she was the victim in that case, yet he continued to press and encourage the recipient of the call to prevent her testimony. . . .

(Trial Court Opinion, 3/05/18, at 5-6).

Upon review, we agree with the trial court. The jury could reasonably infer from the evidence presented that Appellant contacted Ms. Moore and urged his male friend to call her in an effort to interfere with the administration

- 8 -

of the justice system by attempting to convince her to withhold testimony and ignore the order that she appear.  **See Beasley**, **supra** at 48; **see also** 18 Pa.C.S.A. § 4952(a) (3), (5).  The jury had the opportunity to consider Appellant's tone of voice, derogatory language towards Ms. Moore, and persistent directive that she need not testify.  The jurors were also aware of the tumultuous dynamic between the couple in that, although Appellant was awaiting trial on charges that he shot Ms. Moore in the leg, she continued to take his phone calls and maintain a relationship with him while he was incarcerated.  **See Lynch**, **supra** at 710; (**see also** N.T. Trial, 8/01/17, at 59-61; Commonwealth's Exhibit 3).

Therefore, we conclude that, viewing the evidence in the light most favorable the Commonwealth, the evidence is sufficient to support Appellant's convictions.  **See Edwards**, **supra** at 969–70.  Appellant's claims would not merit relief, even if he did not waive them.  Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/18

- 9 -