J-S48039-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN SANCHEZ, | : | |
| | : | |
| Appellant | : | No. 1401 EDA 2018 |

Appeal from the Judgment of Sentence March 23, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005796-2017

BEFORE:    BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:              **FILED OCTOBER 16, 2019**

Juan Sanchez (Appellant) appeals from the March 23, 2018 aggregate judgment of sentence of 15 to 30 months of imprisonment after he was found guilty of simple assault and recklessly endangering another person (REAP). Counsel has filed a petition to withdraw and a brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967). We affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

In June 2017, Appellant was arrested and charged with aggravated assault, simple assault, and REAP. These charges arose from a domestic violence incident between Appellant and his then-girlfriend, B.T. Eventually, Appellant proceeded to a non-jury trial. We begin with a summary of the facts presented at Appellant's trial.

---

*Retired Senior Judge assigned to the Superior Court.

B.T. testified that on the evening of June 18, 2017, B.T. and Appellant were together at the home they shared.[1] N.T., 10/27/2017, at 11-12. B.T. testified that she and Appellant began arguing about Appellant's infidelity. *Id.* at 12. B.T. stated that the argument was precipitated by Appellant's wanting to have sex with her, and B.T. not wanting "to have sex with him." *Id.* The argument spilled over to the next day and, although Appellant and B.T eventually left the home separately, they continued arguing over the phone "back and forth" the "whole day." *Id.* at 13. B.T. testified that at some point during their argument, she requested Appellant meet her back at home so she could collect her belongings. *Id.* B.T. explained she requested Appellant meet her at the home because she had previously lost her keys and needed Appellant to let her in. *Id.*

B.T. testified that when she arrived at the home, she and Appellant

kept arguing. [Appellant] kept telling [*sic*] me just all different kind [*sic*] of names. We w[ere] arguing for about a good hour back and forth. He was calling me names. We [were] back and forth arguing.

After we started arguing, I went upstairs. I got a phone call. My ex-boyfriend was calling to check on my brother. My brother was incarcerated. He sent him $200.00. He wanted to make sure that my brother did get the money.

That's when [Appellant] went off. He started punching me in the face, dragging me, just beating me up from the front room all the way to the hallway. He was beating me up. At the time I

---

[1] B.T. testified that, while she and Appellant lived together, only Appellant's name was on the lease. N.T., 10/27/2017, at 13.

- 2 -

was on crutches.[2] I couldn't [sic] even barely walk. I had staples. I had over 40 staples in my right hip. So he was dragging me and punching me. He would not stop. So when I fell on the ground, and I fel[l] unconscious for about a minute or two, I was able to get up. Once I got up, I picked up the first thing that I [saw so] he would stop hitting me, so I picked up a crowbar and hit [Appellant] with it.

After that[, Appellant] threw me down the steps, because now he wants me out of the house. So it was poor [sic] raining. When he threw me down the steps, he ripped my clothes. My shirt was ripped. Now, he[ is] telling me to get out. I fell again outside. Three steps outside, I fell from the rain.

*Id.* at 14-15.

B.T. testified that once outside, her friend Carmen, whom B.T. had called earlier to assist in removing B.T.'s belongings from the home, arrived. Upon seeing "all of the bruises and the bleeding[,]" Carmen called the police. *Id.* at 15-16. The police arrived shortly thereafter, but by that time, Appellant had already left the area.[3] *Id.* at 15.

Next, Officer Christopher Rycek testified that he and his partner, Officer Keen, responded to a "priority" dispatch call of "[a] person screaming[.]" *Id.* at 44. Officer Rycek testified that upon arriving to the scene, he was flagged down by B.T., who told the officers "she had just been assaulted by her

---

[2] B.T. testified that prior to this altercation she had been in a car accident and, as a result, had to undergo hip surgery. N.T., 10/27/2017, at 12. At the time of the assault, she was still recovering from surgery. *Id.* at 16.

[3] At the end of B.T.'s testimony, the Commonwealth entered several photographic exhibits into evidence, which B.T. testified portrayed how she looked after the assault. *Id.* at 17-21. The photographs depicted numerous bruises, contusions and torn clothing.

boyfriend, [Appellant]." ***Id.*** at 44. Officer Rycek testified that B.T. told him that Appellant had become physically violent towards her. Specifically, B.T. told Officer Rycek that Appellant had punched her numerous times in the face, grabbed her, pulled her hair, pushed her down the stairs, kicked her and ripped her shirt and pants. ***Id.*** at 44-45. Officer Rycek testified that during his contact with B.T., he observed that

> she had numerous scratches and marks to her face. Also, [] she had what appeared to be fingerprints on her hand that would be consistent with a hard grip of the hand. There was bruising and redness to both legs, her shirt was ripped around the collar. It was pulled down and her pant leg, I believe, they were light gray sweat pants, shorts, was ripped completely open in the inseam. Aside from that, that was pretty much all of the observations aside from her emotional state of she was crying, she was shaken, she was clearly distraught.

***Id.*** at 46.

After the Commonwealth rested, the defense called Detective Malinka Bragg, who interviewed B.T. after the assault, to testify. The testimony was brief and consisted mostly of: (1) Detective Bragg's recollection of the interview; and (2) Detective Bragg's explanation of the contents of the written statement she created to memorialize the interview. ***Id.*** at 54-57. The defense then called Jacqueline Martinez, Appellant's mother. In pertinent part, during her direct testimony, Martinez testified that on the day in question, she had received a call from Appellant that he was going to meet with B.T. at his home. Martinez testified that B.T. had "always been aggressive towards" Appellant, and with that in mind, she decided to drive to Appellant's home. ***Id.*** at 59.

Martinez testified that when she arrived she saw Appellant bent over and B.T. standing with a crowbar in her hand. *Id.* at 59, 72. Martinez testified that she and B.T. began fighting, but were eventually separated by Appellant.[4] *Id.* at 60. She then got in her car and left with Appellant. *Id.* She testified that during the time she was at Appellant's home, she never saw Appellant hit B.T. *Id.* at 70-71.

At the conclusion of trial, Appellant was acquitted of aggravated assault, but was found guilty of simple assault and REAP. On March 23, 2018, the trial court sentenced Appellant to an aggregate term of 15 to 30 months of incarceration. Appellant did not file a post-sentence motion. Appellant timely filed a notice of appeal.[5] The trial court ordered Appellant to file a concise statement of errors complained of on appeal, and counsel for Appellant filed a statement of intent to file an *Anders* brief.[6] *See* Pa.R.A.P. 1925(c)(4).

_____

[4] To the contrary, B.T. testified that while Martinez was at the home for a brief period of time, Martinez remained outside the home and never came inside. *Id.* at 38, 42. B.T. testified that Martinez was yelling at B.T. to come outside "and fight her" and Martinez's daughters, but B.T. refused, and Martinez eventually left. *Id.* at 42.

[5] After filing a notice of appeal, trial counsel was permitted to withdraw and new counsel, David M. Simon, Esquire, entered his appearance.

[6] In light of counsel's statement of intent to file an *Anders* brief, the trial court opted not to enter any opinion on the merits. Order to Transmit Record, 1/29/2019.

On appeal, Appellant's counsel filed both an ***Anders*** brief and a petition to withdraw as counsel. Accordingly, the following principles guide our review of this matter.

> Direct appeal counsel seeking to withdraw under ***Anders*** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an ***Anders*** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….
>
> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with ***Anders*** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy ***Anders***, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

***Commonwealth v. Wrecks***, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations omitted). Our Supreme Court has clarified portions of the ***Anders*** procedure:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

- 6 -

record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Based upon our examination of counsel's petition to withdraw and ***Anders*** brief, we conclude that counsel has complied substantially with the technical requirements set forth above.[7]  Therefore, we now have the responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

The issues arguably supporting an appeal cited by Appellant's counsel challenge the sufficiency and weight of the evidence to sustain Appellant's convictions. ***Anders*** Brief at 8, 10.  Notably, however, the arguments in support of these respective claims are essentially identical to one another. ***Compare Anders*** Brief at 8 ("Appellant argues that the evidence failed to prove that he committed the offense[s], as [B.T.] offered differing versions of events to [] at trial as compared with her statement to Detective Bragg.") with *id.* at 11 ("Appellant argues that the inconsistencies in [B.T.'s] testimony, as compared to her earlier statement, render the verdicts contrary to the weight of the evidence.").  Challenges to the sufficiency and weight of the evidence are distinct claims.

---

[7] Appellant has not filed a response to counsel's petition.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. … [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000) (citations, quotation marks, and footnote omitted). An argument directed to the credibility of testifying witnesses challenges the weight, not the sufficiency of the evidence. *Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013).

As preliminary matter, we find Appellant's weight-of-the-evidence claim waived due to his not having filed a post-sentence motion. *See* Pa.R.Crim.P. 607(a) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time

before sentencing; or (3) in a post-sentence motion."). Our review of the trial court's docket and the certified record reveals that Appellant did not make an oral or written pre-sentence motion or a post-sentence motion challenging the weight of the evidence. Consequently, Appellant waived this issue.[8] *See Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa. Super. 2003) (providing that a weight of the evidence "claim must be presented to the trial court while it exercises jurisdiction over a matter since [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence") (citations and quotation marks omitted).

We now address Appellant's sufficiency claim, and do so mindful of the following.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the

---

[8] Briefly, we note that our case law is clear that the finder of fact is "in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness'[s] credibility." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). Thus, it was within the province of the trial court, as fact-finder, to believe B.T.'s testimony that Appellant assaulted B.T., disbelieve evidence presented by the defense, and resolve any inconsistent testimony presented in the Commonwealth's favor. *See Commonwealth v. Miller*, 172 A.3d 632, 642 (Pa. Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact.").

Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotations omitted).

As set forth *supra*, the crux of Appellant's argument, that B.T. provided conflicting testimony, is a challenge to the weight, not the sufficiency of the evidence. Regardless, even if Appellant properly presented a sufficiency claim, we find the Commonwealth met its burden of proving each and every element of the crimes for which Appellant was convicted.

 "Pursuant to 18 Pa.C.S.[] § 2701, '[a] person is guilty of [simple] assault if he: (1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another.' 18 Pa.C.S.[] § 2301 defines 'bodily injury' as '[i]mpairment of physical condition or substantial pain.'" *Commonwealth v. Klein*, 795 A.2d 424, 428 (Pa. Super. 2002). A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

In this case, at trial, B.T. testified that, while trying to collect her belongings from the home she shared with Appellant, Appellant attacked her and became physically violent towards her. Specifically, B.T. testified that Appellant punched her in the face, hit her numerous times, dragged her across the floor, "beating [her] up from the front room all the way to the hallway[,]"

until she became unconscious. N.T., 10/27/2017, at 14. The assault ended with Appellant throwing B.T. down the stairs of the home. *Id.* at 15. B.T. testified that on the day of the assault, she was on crutches and had 40 staples in her hip, as a result of surgery she had recently undergone for injuries she sustained in a car accident. *Id.* at 12, 14.

Based upon the foregoing, we find Appellant's conduct clearly established the elements of the aforementioned statutes. Here, B.T.'s testimony that Appellant repeatedly hit and punched B.T. to the point of unconsciousness, in conjunction with Officer Rycek's testimony that he observed scratches, marks, bruising and redness on B.T.'s body when he arrived to the scene, established that Appellant intentionally and recklessly caused serious bodily injury to B.T. *Id.* at 14-15, 46.

Moreover, Appellant engaged in conduct that placed B.T. in danger of death or serious bodily injury when he "threw" B.T., who was recovering from hip surgery and walking only with the assistance of crutches, down the stairs of his home. *See Commonwealth v. Rahman*, 75 A.3d 497, 502-503 (Pa. Super. 2013) (finding the evidence sufficient to sustain Rahman's REAP conviction where Rahman "thr[ew] punches at [a police officer] on a stairwell on a crowded balcony next to a glass divide;" although the officer did not actually fall down the stairs, the evidence was sufficient to place the officer "in danger of death or serious bodily injury" because [Rahman's] actions

"easily could have caused [the officer] to lose his footing and fall down the stairs"). Thus, Appellant's sufficiency claim fails.[9]

In light of the foregoing, we agree with counsel that claims challenging the sufficiency and weight of the evidence to sustain Appellant's convictions are frivolous. Moreover, we have conducted "a simple review of the record" and have found no "arguably meritorious issues that counsel, intentionally or not, missed or misstated." **Dempster**, 187 A.3d at 272. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

---

[9] Lastly, to the extent Appellant is arguing that the evidence was insufficient because at the time of the altercation he was acting in self-defense, we are mindful that

> [w]here an accused raises the defense of self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense. The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the [fact-finder] to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

**Commonwealth v. McClendon**, 874 A.2d 1223, 1229-30 (Pa. Super. 2005) (citations and quotation marks omitted). Here, the Commonwealth sufficiently disproved any theory of self-defense by establishing that Appellant was the aggressor who attacked B.T. and that at the time of the assault, B.T. was on crutches and recovering from surgery. In light of the case law cited *supra*, it was within the province of the trial court, as fact-finder, to reject the defense's theory of self-defense, in favor of the Commonwealth's evidence.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>10/16/19</u>