J-A29043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARSHAWN TYLIQUE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 630 WDA 2021 |

Appeal from the Judgment of Sentence Entered April 23, 2021,
in the Court of Common Pleas of Erie County,
Criminal Division at No(s):  CP-25-CR-0001920-2020.

BEFORE:  BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: FEBRUARY 15, 2023**

Marshawn Tylique Williams appeals from the judgment of sentence imposed following his convictions of second-degree murder, robbery, conspiracy, and flight to avoid apprehension.[1]

Williams' convictions arose from his activities on January 19, 2020, when Williams conspired with co-defendant, Jakwaris Robison and co-conspirators, Melissa Seaman and Michael Toles, to arrange and consummate a drug transaction with, and robbery of, Devin Way outside Way's residence in Erie.  During the robbery, Way was shot and killed.

The trial court detailed the pertinent facts and trial testimony regarding the shooting incident as follows:

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1), 903, and 5126(a), respectively.

Earlier on January 19, 2020, Seaman, Toles, and Robison were riding as passengers in a grey, four-door Honda operated by [Williams]. While the group was driving around, Seaman messaged various third parties on her cell phone in an attempt to "see if anyone ha[d] any drugs or money that would be a possible lick." (In their vernacular, a lick is a robbery victim). After a potential target, Cohen Heath, failed to respond, Seaman continued to reach out to others on her cell phone until she successfully made contact with [Devin Way]. Way agreed to sell two (2) ounces of marijuana in exchange for $400.00.

The four co-conspirators proceeded to the Dollar Tree store located in the Liberty Plaza. [Williams], co-defendant Robison, and Toles exited the vehicle to obtain items from the store, some or all of which were not paid for. Co-defendant Robison's main purpose in going to the store was to obtain gloves to eliminate the possibility of fingerprints being left behind "in case things went bad." Before the three-some returned to the car, Toles heard Robison and [Williams] discuss harming Seaman "if things went bad" to prevent Seaman from saying something.

Meantime, while Seaman waited inside the car, for the three of them to return, she obtained from Way his address. When the three males returned to the car, Seaman announced "she felt like [Way] was going to be an easy person to get at."

Toles described the foursome's plan to rob Way:

That I was going to be in the back seat and Robison would still be in the back seat and [Seaman] would get in the [front] passenger seat. And our plan was to get out of the car and let [Way] in the middle and was going to produce a gun and tell Way to get out.

With [Williams] behind the wheel, the four proceeded to Way's residence. Way exited his home and approached the Honda. As planned, Robison exited the back seat and instructed Way to get in the middle, next to Toles. Way refused to get in the middle, so Robison re-entered the back seat, took the middle position, and Way got in the car after him. Way closed the door and [Williams] drove off.

Way directed [Williams] to turn from Southgate Drive unto Usonia Avenue. Way produced and passed around for "inspection" the marijuana for sale. However, as testified to by Seaman, no one in the vehicle actually had money on them to make the

purchase. The sham inspection continued, with Seaman passing the marijuana to [Williams] who stated he "was good" with the marijuana.

Following a brief period of awkward silence, the drug transaction morphed into the planned robbery of Way. According to the testimony of co-conspirator Toles, Toles pulled out a gun, reached around Robison, pointed the gun at Way, and instructed Way to get out of the car. Way refused and grabbed the gun. A struggle ensued between Toles and Way for the gun. [Williams], from the driver's seat, called out for Robison to assist Toles.

In response, Robison squeezed out from between Way and Toles and exited the car though the driver's side rear door. Robison ran to the other side of the car to the rear passenger door, opened the door, raised his gun and started shooting at Way.

Toles testified Robison fired the gun four (4) to six (6) times in quick succession. According to Toles, Way was shot in the back. Seaman testified she heard approximately (4) gunshots; she heard Toles yell that, he was shot, too; and when she turned around, she saw blood on Toles' leg. Seaman testified she did not see or hear from Way again.

Toles, from his position behind [Williams], observed Way turn toward Robison, and that Robison continued to shoot. It is apparent from Toles' testimony that after Robison stopped firing, either Way fell out of the vehicle through the rear passenger door where Robison was standing, or Robison pulled Way out of the car. Regardless, Toles heard Way scream during the process. Way landed on the ground, face done in the snow. Robison jumped back into the car through the door from which Way fell.

Trial Court Opinion, 12/13/21, at 2-4 (citations to record omitted).

The trial court also summarized the events that occurred after the shooting, as well as the eventual apprehension of Williams and Robison:

With [Williams] behind the wheel, the four attempted to drive away. [Williams] stopped the vehicle briefly, and switched seats with Seaman so she could drive. Seaman, in a panic, drove the Honda into a snowbank where it became temporarily stuck.

At this juncture, [Williams] and Robison exited the car and started to run away.

Toles called out for Robison to return and get Robison's gun. Robison complied and Toles handed him Toles' gun as well. [Williams] and Robison then ran off again in the snow through someone's back yard.

Seaman managed to get the car unstuck and drove back past the shooting scene. Seaman, with Toles bleeding in the back seat, drove to a nearby Taco Bell on Peach Street where the Honda was pulled over by the police.

[Williams] and co-defendant Robison left the Erie area and each was missing for quite some time.

With regard to [Williams], the evening of the shooting a warrant was issued for his arrest. Wanted billboards were posted by the U.S. Marshall's Fugitive Task Force in Cleveland, Buffalo, and surrounding areas. In July of 2020, approximately seven (7) months after Way's murder, the police located [Williams] at a friend's residence in the 400 block of East 22nd Street in the City of Erie. [Williams] attempted to remain hidden inside the residence but eventually surrendered to the police.

***

On January 24, 2021, Robison was apprehended in Pittsburgh, where he no longer was wearing the beard he had at the time of the murder.

Trial Court Opinion, 12/13/21, at 3-5 (citations to record omitted).

Following a five-day jury trial, Williams was convicted of the above-enumerated offenses.[2] On April 23, 2021, the trial court sentenced Williams to life without parole followed by an aggregate term of 13½ to 27 years of imprisonment. On May 3, 2021, Williams filed a post-sentence motion, which

_____

[2] The jury convicted Robison of the same charges. His appeal is pending before this Court at No. 741 WDA 2021.

the trial court denied. Williams' trial counsel filed a timely notice of appeal, as well as a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Williams' Rule 1925(b) statement raised the following two claims:

1. That the evidence produced at trial by the Commonwealth of Pennsylvania was insufficient to support convictions in this matter with Second Degree Murder[,] Conspiracy, Flight to Avoid Apprehension, and Robbery[.]

2. The Court allowed the introduction of evidence of text/telephonic messages between a co-Defendant and an unknown subject pertaining to unrelated matters from the night prior to this offense date whose prejudicial value far outweighed any probative value, thereby prejudicing the jury as to the intent and guilt of [Williams].

Rule 1925(b) Statement, 5/24/21, at 1. The trial court filed it Rule 1925(a) opinion on December 13, 2021.

Williams raises the following two issues:

Did the Commonwealth present sufficient evidence to sustain [Williams'] conviction for the charges of homicide/murder of the second degree or conspiracy to commit robbery/robbery?

Did the trial court err in permitting the Commonwealth to present text messages between the co-defendants, when the messages were not relevant to the offense and their prejudicial value far surpassed any probative value?

Williams' Brief at 2 (footnote and excess capitalization omitted).[3]

---

[3] Regarding Williams' second issue, it was never established at trial that he was the recipient of the text messages Robison sent the day before the shooting incident.

Williams' first issue challenges the sufficiency of the evidence supporting three of his convictions. Our standard of review is well settled:

> When reviewing a challenge to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving it the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Lynch***, 72 A.3d 706, 708 (Pa. Super. 2013) (*en banc*). Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. ***See Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001). Additionally, the Commonwealth may sustain its burden solely by means of circumstantial evidence. ***Lynch***, 72 A.3d at 708.

***Commonwealth v. Lake***, 281 A.3d 341, 345–46 (Pa. Super. 2022) (citation formatting altered).

Williams' second issue challenges the admissibility of evidence. Our standard of review for such a challenge is also well settled:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. ***See*** Pa.R.E. 401; Pa.R.E. 402[.]

***Commonwealth v. Dillon***, 925 A.2d 131, 136-37 (Pa. 2007).

In his Rule 1925(a) opinion, the trial judge, the Honorable Daniel J. Brabender, Jr., first noted that Williams' statement of the errors complained of on appeal was too vague and should be considered waived. According to Judge Brabender, Williams' Rule 1925(b) statement was "woefully inadequate" in that it failed "to specify which element or elements of **any** of the crimes" that "the Commonwealth failed to prove beyond a reasonable doubt. Trial Court Opinion, 12/13/21, at 7-9. Regarding the second claim in his Rule 1925 statement, Judge Brabender concluded that Williams "broadly avers evidentiary error occurred in admitting evidence" of "unspecified text messages." *Id.* at 15.

Nonetheless, Judge Brabender authored a thorough and well-reasoned opinion pursuant to Rule 1925(a) which addressed the issues raised by Williams in his Rule 1925(b) statement and found them to be without merit. We discern no legal errors in Judge Brabender's analysis.

As such, we adopt Judge Brabender's Rule 1925(a) opinion as our own in affirming Williams' judgment of sentence. **See** Trial Court Opinion, 12/13/21, at 9-15 (explaining that, when properly viewed, the Commonwealth proved each crime beyond a reasonable doubt); at 16-20 (concluding that no error occurred in admitting text messages co-defendant Robison made to an

unknown party; the text did not directly implicate Williams, but if any error occurred it was harmless). [4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/15/2023

---

[4] The parties are directed to attach Judge Brabender's December 13, 2021, opinion to this memorandum in any future appeal.