**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Calvin Bartholomue LYNCH,
Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 2013.

Filed July 29, 2013.

James J. Karl, Lancaster, for appellant.

Andrew J. Gonzalez, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., BOWES, J., GANTMAN, J., DONOHUE, J., ALLEN, J., OLSON, J., OTT, J., and WECHT, J.

OPINION BY STEVENS, P.J.

Calvin Lynch, Appellant, files this appeal from the judgment of sentence of six to twelve years' incarceration for intimidation of a witness or victim, 18 Pa.C.S. § 4952. Appellant contends that the evidence was either insufficient to prove intimidation as contemplated by the statute or, if deemed so sufficient, unsupportive of a felony grading of the offense. On a record showing Appellant offered to his assault victim benefits designed to compel her absence from his criminal trial, we hold that Appellant committed an act the legislature explicitly sought to proscribe through its enactment of Section 4952. We affirm.

The trial court provides an apt recitation of relevant and undisputed facts, as follows:

On October 10, 2009, the victim in this case was brutally beaten with a baseball bat by [Appellant] who was her boyfriend and the father of her children After hitting his victim with the bat, [Appellant] choked her until she lost consciousness. As a result of this assault the victim sustained a large gash to her head requiring six or seven stitches, a fractured elbow requiring surgery, bruises to her neck and arm and cuts on her legs and one of her knees. Just days later, [Appellant] made two collect calls to the victim from prison asking her to drop the charges and not to show up in court to testify On October 17, 2009, the victim received the handwritten letter from [Appellant] asking her to drop the charges or not show up to testify.

Trial Court Opinion ("TCO"), 6/8/11, at 1–2.

The crux of Appellant's sufficiency challenge states that:

[t]he evidence was insufficient to prove the offense of intimidation of witnesses at 18 Pa.C.S. § 4952—or at least a felony version of that offense—where the content of the communications was not intimidating and where [Appellant] did not offer the complainant a pecuniary or other benefit.

Brief for Appellant at 13.

As a general matter, our standard of review of sufficiency claims requires

that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (Pa.2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence."). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's

crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Stays*, 70 A.3d 1256, 1266, 2013 WL 3378980, at *7–8 (Pa.Super. 2013).

The witness intimidation statute reads, in its entirety, as follows:

(a) **Offense defined.**—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

(b) **Grading.**—

(1) The offense is a felony of the degree indicated in paragraphs (2) through (4) if:

  (i) The actor employs force, violence or deception, or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge upon any other person.

  (ii) The actor offers any pecuniary or other benefit to the witness or victim or, with the requisite intent or knowledge, to any other person.

  (iii) The actor's conduct is in furtherance of a conspiracy to intimidate a witness or victim.

  (iv) The actor accepts, agrees or solicits another to accept any pecuniary or other benefit to intimidate a witness or victim.

  (v) The actor has suffered any prior conviction for any violation of this section or any predecessor law hereto, or has been convicted, under any Federal statute or statute of any other state, of an act which would be a violation of this section if committed in this State.

(2) The offense is a felony of the first degree if a felony of the first degree or murder in the first or second degree was charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.

(3) The offense is a felony of the second degree if a felony of the second degree is the most serious offense charged in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection.

(4) The offense is a felony of the third degree in any other case in which the actor sought to influence or in-timidate a witness or victim as specified in this subsection.

(5) Otherwise the offense is a misdemeanor of the second degree.

18 Pa.C.S. § 4952.

The trial court concluded that the evidence sufficiently demonstrated Appellant's intent to intimidate his girlfriend so that she would not testify against him. The mere act of repeatedly asking a closely-related assault victim, likely still vulnerable in the wake of the brutal beating he administered to her just days earlier, to refrain from testifying against him manifested an intent to intimidate for purposes of Section 4952(a)(1), the court reasoned. Specifically, it found that:

The record in this case clearly demonstrates that there was sufficient evidence to support the guilty verdict for [18 Pa.C.S. § 4952]. In this case, [Appellant] made two phone calls to his victim just days after beating her with a baseball bat and choking her. In those phone calls from prison [Appellant] specifically asked his victim to drop the charges and not testify against him in court. Additionally, [Appellant] sent a letter to his victim again pressing her not to testify against him. Through this letter, [Appellant] made it clear to his victim that she was the key to him being released from prison. After listening to the evidence presented by the Commonwealth regarding the brutal beating of the victim by [Appellant] and the phone calls and letter from prison, the Court inferred from the surrounding circumstances that [Appellant] intended to intimidate his victim so she would not testify against him.

TCO, at 2–3.

Appellant counters that neither an intent nor an attempt to intimidate may be inferred from communications showing only that he prostrated himself in asking

and even begging his girlfriend not to testify. Our review of the phone call transcripts entered into the record indeed reveals that Appellant's girlfriend consistently assumed a dominant position in the conversation and adamantly rejected his pleas. Nevertheless, the statute proscribes an attempt to intimidate a witness into withholding evidence, without reference to whether the attempt actually succeeds. As such, there may be instances where a plea for compassion and forgiveness by a physically abusive companion, partner, or other relation may appear pitiful and even prove unsuccessful in the end, but was, given the dynamics of the relationship at hand, reasonably calculated by the actor to deliver the kind of veiled threat that has bent the witness to his will in the past. In this regard, the facts of each case and the history between the actor and the witness will determine whether such communications, without more, qualify as "intimidation."

Here, however, we need not make such a determination, as the record includes additional instances in which Appellant communicates a clear offer of pecuniary and other benefits as prohibited by the witness intimidation statute. As noted *supra*, a person commits the proscribed offense if, with the intent to interfere with the administration of justice, he attempts to intimidate any witness or victim into withholding testimony from law enforcement, a prosecutor, or a judge. 18 Pa.C.S. § 4952(a)(3). Under Section 4952(b)(1)(ii), a felony version of the offense occurs where "the actor offers any pecuniary or other benefit to the witness or victim or, with the requisite intent or knowledge, to any other person."

In *Commonwealth v. Brachbill*, 520 Pa. 533, 555 A.2d 82 (1989), the Pennsylvania Supreme Court clarified that any offer of benefit with such intent violates the stat-ute even if unaccompanied by threats or overt intimidation:

The offense as defined in paragraph (a) is expressly deemed [ ] a felony [ ] under (b) if: "[ (1)(ii) ] The actor offers any pecuniary or other benefit to the witness or victim...." Thus, although section 4952(a) uses the word "intimidates" and not the former broader term "induce," it is nevertheless clear that the legislature intended to proscribe, under the provisions of this section, any offers of benefit with the intent to "obstruct, impede, impair, prevent or interfere with the administration of criminal justice, ...," and that such conduct would constitute a felony of the third degree.

*Id.* at 540, 555 A.2d at 85. Turning to the facts before it, the *Brachbill* Court discerned a violation from evidence that two prison guards attempted to thwart an official investigation into their alleged abuse of a former inmate by giving him $7.00 and offering to buy him pants and dinner for his family in exchange for his silence. *Id.*

Similarly, Appellant offered pecuniary and other benefits in an attempt to frustrate the prosecution of aggravated assault charges levied against him. In both phone calls and letters in which he persistently asked and even begged his girlfriend not to show at trial, Appellant offered a more stable and rewarding family life for her and their children in exchange for her refusal to testify:

I know deep down inside you still love me & all's you want is the CC you fell in love with to be there for you & the kids & love you back the way you love me.... So I'm beggin you, Lynda, don't send me away just yet.... Jail ain't the answer for me.... So please Lynda don't show up to court please. .... And you already know that you don't have to, they try to scare you but you know all that already.

* * *

I propose that when I do get out (if you don't come to court) I could stay at my mom's and still help with the kids; do whatever I gotta do and then maybe we can move with the income tax money & start fresh....

So, it's a win-win situation for you & me & our kids.... On the other hand, you send me back to jail to rot & wallow in my own shit.

* * *

And I swear whatever you want me to do, whatever you tell me to do, I will do, no questions asked. That's my commitment to you.... So my life is your will ... so please don't throw me away in this system.... So please Lynda don't let this system swallow me up away from you & specially my kids. If not for me, please do it for them. They need me out there & I need to be there for them.

Appellant's letter, authored 10/17/09, at 2, 3, 5, and 6.

*Brachbill* instructs that a violation of the witness intimidation statute is made upon "any offers of benefit with the intent to 'obstruct, impede, impair, prevent or interfere with the administration of criminal justice....'" *Id.* at 540, 555 A.2d at 86. Clearly revealed from the excerpt above is that Appellant offered benefits to the prospective chief witness against him with the intent to compel her absence from his trial. Made explicit in the letter is that all benefits are conditional on her complete disengagement from his prosecution. His criminal intent to frustrate the administration of justice, moreover, is not simply inferable from the offer itself, it is plainly disclosed where he repeatedly indicates that with his girlfriend's compliance, the prosecution against him would founder and charges would be dropped.

As made, Appellant's offer was neither too speculative nor vague to come within the ambit of Section 4952. Indeed, an offer of benefits may be so vague, incredible, or frivolous on its face that it necessarily fails to constitute the criminal act proscribed by the statute, but such is not the case here. Appellant and his girlfriend had a family, and his offer of providing improved household stability and financial support for her and their children in the event she withdrew from his case specifically targeted a parent's basic drive to meet core childcare needs. Though it ultimately rang hollow with his exasperated girlfriend, his proposal was not, under the circumstances, so preposterous that it failed to constitute a valid offer.

Furthermore, there can be no reasonable question upon reading the excerpt above that Appellant's promise of a tax return was both wholly dependent upon the girlfriend's inaction—"(if you don't come to court)"—and an offering of funds not belonging to the girlfriend. Appellant's plea may not have been persuasive, but it was not so illogical, either, that he attempted to entice his girlfriend with her own money. Instead, it represented a way by which he attempted to buttress his offer of stability and support with a specific example of how it could all work. As such, this portion of the offer represented a legitimate offer of pecuniary benefits as contemplated by the statute.

We conclude, therefore, that the legislature intended Section 4952 to address the very conduct here at issue. Appellant sought to frustrate the administration of justice by offering to give the Commonwealth's chief witness pecuniary and other benefits if she agreed to refrain from testifying against him. Accordingly, on a record of a serious offer of benefits made with the intent to derail a prosecution, we find a

violation of Section 4952 and affirm judgment of sentence.

Judgment of sentence is affirmed.

BENDER, J. FILES A DISSENTING OPINION, WHICH JUDGE DONOHUE AND JUDGE WECHT JOIN.

DISSENTING OPINION BY BENDER, J.

The Majority today expands the scope of Pennsylvania's witness intimidation statute well beyond any interpretation previously applied to it by the courts of this Commonwealth. Those previous interpretations, having already stretched the text of the statute to the outermost limits of reason, are now but a starting point for further expansion. Furthermore, the Majority only reaches its conclusion by sitting as fact-finder, a role we are not permitted to undertake. Respectfully, yet adamantly, I must dissent.

I begin by noting the not insignificant fact that the Majority reaches today's decision by ignoring, if not implicitly rejecting, the reasoning offered by the trial court in support of Appellant's conviction for witness intimidation. The trial court found that:

> The record in this case clearly demonstrates that there was sufficient evidence to support the guilty verdict for [18 Pa.C.S. § 4952]. In this case, [Appellant] made two phone calls to his victim just days after beating her with a baseball bat and choking her. In those phone calls from prison [Appellant] specifically asked his victim to drop the charges and not testify against him in court. Additionally, [Appellant] sent a letter to his victim again pressing her not to testify against him. Through this letter, [Appellant] made it clear to his victim that she was the key to him being released from prison. After listening to

the evidence presented by the Commonwealth regarding the brutal beating of the victim by [Appellant] *and the phone calls and letter from prison, the Court inferred from the surrounding circumstances that [Appellant] intended to intimidate his victim so she would not testify against him.*

Trial Court Opinion (TCO), at 2–3.

Thus, the trial court determined that Appellant "intended to intimidate his victim so she would not testify against him" based upon the "surrounding circumstances" rather than based upon any direct statement made by Appellant during the two phone calls to the victim or written in the letter. *Id.* The trial court did not describe what the "surrounding circumstances" were other than by its allusion to the evidence of the underlying crime, which the court expresses as "the brutal beating of the victim[.]" *Id.* I would reverse the trial court because, absent such bootstrapping, there were no facts of record supporting a finding of intimidation. The evidence demonstrated Appellant begged, pleaded, and prostrated himself before the victim. These actions are the antithesis of intimidation.

The trial court made no factual finding whatsoever concerning whether Appellant offered a *"pecuniary or other benefit"* to the victim. Yet, that is precisely the basis on which the Majority rests its decision: "the record includes additional instances in which Appellant communicates a clear offer of pecuniary and other benefits as prohibited by the witness intimidation statute." Majority Opinion, at 710. The trial court opinion did not cite to the pecuniary benefits provision, 18 Pa.C.S. 4952(b)(1)(ii), nor did it conduct any factual or legal analysis under that portion of the statute. This should come as no surprise considering the fact that neither the criminal complaint filed by the police, nor the criminal

information prepared by the Commonwealth, referenced the pecuniary benefit provision by name or in substance.

It is certainly true that "[a] ruling or decision of a lower court will be affirmed if it can be supported on any basis despite the lower court's assignment of a wrong reason." *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398, 409 (1987). Yet, in this instance, the Majority does not merely apply a different legal basis to the same facts upon which the trial court found the evidence sufficient to support conviction. Instead, the Majority dons the cloak of factfinder to parse through the record in pursuit of 'facts' that were neither explicitly nor implicitly found by the trial court. However, "the decision whether to draw [an] inference" from the evidence that would fulfill an element of a criminal offense "rests with the fact-finder, not an appellate court. It is the province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded the evidence produced." *Commonwealth v. Murray*, 460 Pa. 605, 334 A.2d 255, 257 (1975). Thus, even assuming that the Majority's expansive view of section 4952(b)(1)(ii) is correct, this case does not present a factual basis upon which to reach that result. It is only by usurping the trial court's role as fact-finder that the Majority decision is attainable, and on that basis alone the Majority's decision today is indefensible.[1]

The substance of the Majority's decision today is no less troubling. Succinctly put, the Majority concludes that an offer of "a more stable and rewarding family life … in exchange for [the Victim's] refusal to testify" constitutes sufficient evidence of an offer of a pecuniary or other benefit prohibited under section 4952(b)(1)(ii). Majority Opinion, at 710. The Majority sustains this conclusion based upon an overly expansive reading of our Supreme Court's decision in *Commonwealth v. Brachbill*, 520 Pa. 533, 555 A.2d 82 (1989). The benefits offered in exchange for the victim's refusal to testify in *Brachbill* may have been minimal, yet they were unquestionably pecuniary in nature, both because an actual dollar amount was offered, and because the additional offer of clothing and dinner were benefits of tangible monetary value. Here, Appellant's promise of a better life for the victim and their mutual children is both indirect and remote, and not a benefit capable of monetary valuation.

An offer of a better life for the victim and her children is simply not a pecuniary or similar "other" benefit within the literal meaning of section 4952(b)(1)(ii), nor is it obvious that prohibition of such a promise comports with the intent of the statute. The statute reads in pertinent part as follows:

**(b) Grading.—**

(1) The offense is a felony of the degree indicated in paragraphs

(2) through (4) if:

. . .

(ii) The actor offers any pecuniary or other benefit to the witness or victim

---

1. It may be the case that the pecuniary benefits provision is not an 'element' of the offense of witness intimidation, but rather exists only as a sentencing factor. Accordingly, the Commonwealth's failure to specifically charge Appellant pursuant to one of those provisions may not preclude a conviction premised upon an offer of pecuniary benefits. *See Commonwealth v. Stokes*, 38 A.3d 846, 861 (Pa.Super.2011) ("Sentencing factors … do not need to be proven beyond a reasonable doubt, nor even included in a criminal information or indictment."). Nevertheless, it is *never* within the province of this or any other appellate court to assume the role of fact-finder despite the difference in the underlying standard of proof between elements of crimes and sentencing factors.

or, with the requisite intent or knowledge, to any other person.

18 Pa.C.S. 4952(b)(1)(ii).

When interpreting the terms of a criminal statute, this Court adheres to the following principles:

> [N]o conduct constitutes a crime in this Commonwealth unless it is a crime under Title 18 or another statute. Stated differently, Pennsylvania is a "code jurisdiction": it recognizes no common law crimes. Necessarily, then, when the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute.
>
> Moreover, penal statutes are to be strictly construed. The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of the statute must be construed according to their common and approved usage. It does mean, however, that where an ambiguity exists in the language of the penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt.... Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.

*Commonwealth v. Reaser*, 851 A.2d 144, 148–49 (Pa.Super.2004) (quoting *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001)). Furthermore, "strict construction is a means of assuring fairness to persons subject to the law by requiring penal statutes to give clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *Reaser,* 851 A.2d at 149 (quoting *Commonwealth v. Cluck,* 252 Pa.Super. 228, 381 A.2d 472, 477 (1977)).

The legislature, by use of the phrase, "pecuniary or other benefit" clearly intends to use the word "other" to identify benefits *like or similar to pecuniary benefits*. Use of the word "other" in this context does not encompass *any other form* of a benefit. If that were the case, a far more simple construction would have been both sufficient and crystal clear. If the legislature meant any type of benefit, pecuniary or otherwise, the phrases " ... offers any benefit" or " ... offers a benefit" would have been far more concise. Even far more awkward constructions would have been less ambiguous than using the phrase "pecuniary or other benefit" to mean *any form of a benefit*. Thus, the only way to avoid ambiguity in the reading of the phrase as it appears in the text of the statute is to limit the meaning of "other" to those benefits "like or similar to pecuniary benefits."

The Majority does not acknowledge the less ambiguous, plain meaning of the text, and instead it has implicitly adopted the more ambiguous, awkward, and expansive construction that permits 'any type of benefit whatsoever no matter how speculative or tenuous' to be read into the phrase "pecuniary or other benefit." However, it has long been the explicit policy of the appellate courts of this Commonwealth that "[a]ny ambiguity concerning the ambit of a penal statute must be resolved in favor of lenity." *Commonwealth v. Reaser,* 851 A.2d 144, 149 (Pa.Super.2004). The Majority has done a serious disservice to

this principle today by adopting a meaning that renders the phrase "pecuniary or other benefit" more ambiguous than is necessary or prudent. I have little doubt that a reasonable citizen reading the provisions of 18 Pa.C.S. 4952 would find the statute at least ambiguous with regard to whether the conduct at issue in this case was prohibited. Regardless of the direction the Majority takes today, Appellant should be afforded the benefit of that ambiguity, as the standard set by the Majority was hardly foreseeable in light of the plain text of the statute.

The Majority rejects a straightforward interpretation of section 4952(b)(1)(ii) in favor of the more expansive and ambiguous one, because Appellant's proposal "targeted a parent's basic drive to meet core childcare needs[,]" and because it "was not, under the circumstances, so preposterous that it failed to constitute a valid offer." Majority Opinion, at 711. The Majority concedes, at least, that "an offer of benefits may be so vague, incredible, or frivolous on its face that it necessarily fails to constitute the criminal act proscribed by the statute." *Id.* The incongruity of these points, however, is glaring. If these 'facts' do not constitute a vague, incredible, or frivolous offer, what does? The bar has been set so low by the facts of this case that a prosecutor need only trip over it to satisfy the Majority. Surely the brutality of Appellant's underlying crime, the fact that he was incarcerated at the time he conversed with the victim, and his demeanor during those conversations, should lead this Court to recognize how frivolous his offer was, even if it was not vague enough to suit the Majority's standards.

Promises of better behavior or new beginnings are such an inextricable part of any conversation held between those attempting to salvage failing relationships that one cannot help but think that the Majority's decision today criminalizes nearly any communication between victims and perpetrators of domestic violence. No such intent can be discerned from the witness intimidation statute. Today, the Majority piles on punishment to the perpetrator of a horrendous act of violence. Tomorrow, the violence may itself be negligible and the intent of the parties to reconcile outside the court system mutual and sincere, yet, the Majority's unrestrained interpretation of section 4952(b)(1)(ii) criminalizes efforts at atonement should a defendant dare suggest that the criminal justice system is an inappropriate venue to settle an marital dispute or similar affair.

Because the Majority usurped the role of fact-finder, adopted a dramatically expansive, awkward, and ambiguous construction of the phrase "pecuniary and other benefits" as set forth in section 4952(b)(1)(ii), and because the Majority ignored the principle of lenity, I respectfully dissent.