J-S08042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JANET GIULIA BRILL :
:
Appellant : No. 785 MDA 2022

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000212-2020

BEFORE: OLSON, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: MAY 31, 2023**

Appellant, Janet Giulia Brill, appeals from the judgment of sentence imposed following her conviction, after a jury trial, of two counts of intimidation, retaliation, or obstruction in child abuse cases—intimidation or intent to intimidate person to give false or misleading information.[1] On appeal, Appellant challenges the sufficiency of the evidence, argues that the trial court wrongfully denied her suppression motion, and contends that her sentence of two to four years' imprisonment was excessive. We affirm one of Appellant's convictions, reverse the other conviction, vacate her judgment of sentence, and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 4958(a)(2)(iii).

The victims in these matters are X.B. and N.B., Appellant's minor grandsons who were approximately 11 and 13, respectively, during the period of the events relevant to this case. In April 2019, the Pennsylvania State Police ("PSP") received a ChildLine report[2] that X.B. was the victim of sexual abuse perpetrated by another family member, D. N.T. Trial at 99; Joint Ex. 1 (Stipulation), ¶2. At the time of that report, X.B., N.B., and D. all lived with Appellant at her home in York County, but, following the sexual abuse report, X.B. was removed from Appellant's home and began to reside at the York County Youth Development Center ("YDC"). N.T. Trial at 107-08, 122, 148-49, 160-61. PSP then received a subsequent ChildLine report in July 2019 that Appellant had physically abused X.B. and N.B. by striking them with a stick. N.T. Trial at 99, 181-82; Joint Ex. 1 (Stipulation), ¶1.

A forensic interview was conducted with X.B. at the York County Children's Advocacy Center ("CAC") on May 1, 2019 regarding the sexual abuse report. N.T. Trial at 130, 199. X.B. was then interviewed at CAC with

_____

[2] ChildLine is "[a]n organizational unit of the Department [of Human Services of the Commonwealth] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under section 6332 of the [Child Protective Services Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file." *In the Interest of D.R.*, 216 A.3d 286, 294 n.5 (Pa. Super. 2019) (quoting 55 Pa. Code § 3490.4), *affirmed*, 232 A.3d 547 (Pa. 2020); *see also* N.T. Trial at 127, 198 (describing how, once ChildLine report is made related to conduct occurring in York County, it is referred to the York County District Attorney's Office and then to PSP, York County Children, Youth, and Families, and the York County Children's Advocacy Center, as appropriate).

respect to the second ChildLine report, related to the allegations of physical abuse, on July 29, 2019, while N.B. was interviewed at CAC on July 31, 2019. *Id.* at 99, 131-32, 183; Joint Ex. 1 (Stipulation), ¶¶3, 4. During N.B.'s interview, he disclosed the fact that he had made an audio recording of a conversation with Appellant using his cell phone that captured Appellant instructing N.B. on what to say to authorities during the interview. N.T. Trial at 183-84. PSP collected N.B.'s phone as evidence at that time. *Id.* at 183-84.

After being charged with the above-stated offenses,[3] Appellant filed a suppression motion challenging the use of N.B.'s audio recording in this prosecution as violative of the Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. §§ 5701–5782. A suppression hearing took place on September 24, 2020. On November 5, 2020, the trial court filed an opinion and order denying Appellant's motion, ruling that the recording fell within the "crime of violence" exception to the Wiretap Act, *see* 18 Pa.C.S. § 5704(17). Trial Court Opinion, 11/5/20, at 5-6.

The jury trial began on November 15, 2021 with the following witnesses testifying at trial: X.B., N.B., Lauren Carter, a forensic interviewer at CAC, and PSP Troopers Coty Zorbaugh and Tina Peters. During their testimony, X.B. and N.B. each described conversations with Appellant in which she

---

[3] Appellant was initially charged with three counts of intimidation, retaliation, or obstruction in child abuse cases, with one charge subsequently withdrawn by the prosecution.

requested that they make untrue statements during their CAC interviews. In addition, the audio recording of N.B.'s conversation with Appellant was played to the jury. Ms. Carter described her involvement in conducting the forensic interviews with X.B. and N.B. at CAC, and Troopers Zorbaugh and Peters testified as to their role in the investigation of the ChildLine reports of sexual and physical abuse and the witness intimidation investigation arising therefrom.

On November 18, 2021, the jury found Appellant guilty of both counts of intimidation, retaliation, or obstruction in child abuse cases, one count each as to N.B. and X.B. On December 29, 2021, the trial court sentenced Appellant in the aggravated range to consecutive one-to-two-year terms of imprisonment at each count and a $5,000 fine at each count. Appellant filed a post-sentence motion, which the trial court denied after an April 25, 2022 hearing. Appellant then filed this timely appeal.[4]

Appellant presents the following issues to this Court on appeal:

[1.] Did the lower court err in denying [Appellant's] Motion to Suppress the recording of her statements in violation of the Wiretap Act where she did not consent to the recording, she held a reasonable expectation that she was not being recorded, and the exception to the Wiretap Act that the lower court found applicable does not fit this case because there was no expectation that the recording would capture evidence of a crime of violence?

[2.] Was the evidence [] insufficient to prove beyond a reasonable doubt that [Appellant] intimidated or attempted to intimidate

_____

[4] Appellant filed her concise statement of errors complained of on appeal on June 14, 2022. The trial court filed an opinion on September 6, 2022.

either X.B. or N.B. where neither child indicated he ever felt threatened or scared, X.B. gave virtually no details on what [Appellant] said or how she said it, and N.B.'s recorded statement was filled with laughter and jokes that failed to suggest actual or attempted intimidation?

[3.] Did the lower court abuse its discretion where it imposed an excessive aggregate sentence that reflects no consideration of [Appellant's] medical condition and rehabilitative needs?

Appellant's Brief at 5 (reordered for ease of disposition).

Appellant first challenges the denial of her suppression motion, which was premised on her argument that N.B.'s nonconsensual recording of a conversation with her violated the Wiretap Act. Our standard of review of a trial court's ruling on a suppression motion is "whether the record supports the findings of fact of the suppression court and whether the legal conclusions drawn from those findings are correct." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (citation omitted); *see also Commonwealth v. Rosario*, 248 A.3d 599, 607 (Pa. Super. 2021). We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions *de novo*. *Byrd*, 235 A.3d at 319; *Rosario*, 248 A.3d at 607-08. The trial court has sole authority to pass on the credibility of witnesses and the weight to be given to their testimony. *Rosario*, 248 A.3d at 608. Our scope of review is limited to the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant. *Commonwealth v. Mason*, 247 A.3d 1070, 1080 (Pa. 2021); *see also Commonwealth v. Kane*, 210 A.3d 324, 329 (Pa. Super. 2019).

- 5 -

"[I]n general, the Wiretap Act prohibits the interception, disclosure or use of any wire, electronic or oral communication." **Mason**, 247 A.3d at 1080 (quoting **Byrd**, 235 A.3d at 319). When a party believes that an "oral communication" will be offered into evidence at a proceeding in violation of the Wiretap Act, the party may file a motion to exclude the communication from consideration in the proceeding. 18 Pa.C.S. § 5721.1(b); **Mason**, 247 A.3d at 1080. An oral communication is defined under the Wiretap Act as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. § 5702.

N.B. was the only witness to testify at the suppression hearing. N.B. testified that, prior to the conversation at issue, X.B. had been removed from Appellant's house and social workers "were coming by questioning us" and they were "getting ready for the Court and stuff." N.T., 9/24/20, at 7. N.B. stated that he had been "coach[ed]" on at least one prior occasion by Appellant to falsely state to social workers and others that she had not perpetrated any physical abuse towards N.B. and X.B. **Id.** at 8-10. N.B. did not "know the exact reason" why Appellant informed him not to disclose the abuse, but he knew "it was bad" and "so she doesn't get in trouble." **Id.** at 10, 25. N.B. was playing video games when Appellant called him into her room for a conversation; he testified that he caused his phone to begin recording at the outset of the conversation without knowing definitively that she would proceed to coach him, but with the expectation that she might do

- 6 -

so. *Id.* at 7, 9-10. N.B. stated that only he and Appellant were in the room and that the conversation lasted for over three hours. *Id.* at 7, 12. In addition to N.B.'s testimony, the parties jointly submitted a copy of the recording for the court's review. *Id.* at 25-26.

The Commonwealth argued at the hearing and in its post-hearing brief that the suppression motion should be denied because the recording falls within the Wiretap Act's "crime of violence" exception, which is expressly defined to include the offense of intimidation of witness or victim. *See* 18 Pa.C.S. §§ 4952(a), (b) (setting forth crime of intimidation of witness or victim), 5702 (defining crime of violence), 5704(17) (stating that it shall not be unlawful for victim or witness to intercept communication if he or she has reasonable suspicion that intercepted party has committed, is committing, or is about to commit a crime of violence and the recording will contain evidence of that crime). In its opinion supporting the denial of the suppression motion, the trial court reviewed N.B.'s testimony and found that N.B.'s act of recording his conversation with Appellant fell within the stated exception as he reasonably could suspect that Appellant would be committing the offense of intimidation of witness or victim. Trial Court Opinion, 11/5/20, at 4-6.

Appellant's argument on appeal primarily addresses the question of whether N.B. could have reasonably suspected that she would commit intimidation of witness or victim as that offense—as distinct from the intimidation, retaliation, or obstruction in child abuse cases offense of which Appellant was convicted—is applicable only in criminal matters and where the

witness or victim is intimidated into withholding information from a "law enforcement officer, prosecuting official or judge."  18 Pa.C.S. § 4952(a)(1), (2), (3), (4); **compare** 18 Pa.C.S. § 4958(a) (defendant must intend to obstruct, impair, or interfere "with the making of a child abuse report or the conducting of an investigation into suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services) or prosecuting a child abuse case"). However, in its Pa.R.A.P. 1925(a) opinion, the trial court noted an additional reason for denying the suppression motion, citing our Supreme Court's decision in **Mason**, which was filed after the suppression motion was decided. **See** Trial Court Opinion, 9/6/22, at 8-9 n.2.  The trial court stated that, as in **Mason**, Appellant here did not meet her burden of showing that she had a justifiable expectation that her conversation was not being intercepted as she could be heard questioning N.B. on the audio recording whether he was taping the conversation.  **See id.**

Upon review, we agree with the trial court's reasoning set forth in its Rule 1925(a) opinion and affirm on that basis.[5]  In **Mason**, the defendant, who worked as a live-in nanny, was charged after her employer turned over the audio and visual recording from a camera placed in one of his children's bedroom; the recording showed Mason forcibly placing a child into a crib, and audio portions of the recording suggested that she may have struck another

---

[5] We may "affirm the trial court's decision on any basis that is supported by the record." **In re A.J.R.-H.**, 188 A.3d 1157, 1175–76 (Pa. 2018).

child several times. 247 A.3d at 1072. Mason filed a motion to suppress the recording from the so-called "nanny cam" pursuant to the Wiretap Act, and the Commonwealth opposed the motion primarily based upon the act's crime of violence exception. *Id.* at 1072-73. At the suppression hearing, the parent testified that he set the camera to record after one of his children sustained a lip injury and another stated that Mason physically struck them, allegations which Mason denied. *Id.* Mason also briefly testified at the hearing regarding her conversation with the parent concerning the lip injury. *Id.* at 1073.

On appeal from the trial court's grant of Mason's suppression motion, our Supreme Court explained that to prevail on a motion to exclude the recording of a communication as a violation of the Wiretap Act, "the claimant carries the burden to demonstrate, *inter alia*, that she possessed an expectation that the communication would not be intercepted and that her expectation was justifiable under the circumstances."[6] *Id.* at 1081. The Court further stated:

> Placing this burden on defendants is consistent with the plain
> language of the Wiretap Act and comports with common sense, as

---

[6] The Court cited its earlier decisions in **Pennsylvania State Police v. Grove**, 161 A.3d 877 (Pa. 2017), and **Agnew v. Dupler**, 717 A.2d 519 (Pa. 1998), which state that a claimant alleging a Wiretap Act violation must show: "(1) that he engaged in a communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." **Agnew**, 717 A.2d at 522; **see also Grove**, 161 A.3d at 901-02. For the purpose of the analysis in **Mason** and in the instant case, only the second and third elements of this test are relevant.

> the Commonwealth would have no incentive to demonstrate that a defendant has a justifiable expectation that her oral communication would not be intercepted, and the Wiretap Act does not require the Commonwealth or any other party to prove a negative, *i.e.*, that the claimant did not have a justified expectation that her oral communication would not be intercepted under the circumstances of the case.

> Thus, for [Mason's] motion to exclude to succeed, she carried the burden of presenting evidence to establish that, under the circumstances of this case, she possessed a justifiable expectation that the oral communications, which were captured by the nanny cam in the [] children's bedroom, would not be intercepted.

*Id.*

The Court determined that Mason failed to meet her burden as the only evidence she "submitted at the suppression hearing was her brief testimony recounting her version of the conversation that took place between her and [the parent] regarding the lip injury suffered by one of [his] daughters." *Id.* The Court found that her "testimony is woefully insufficient to demonstrate that she had a justifiable expectation that her oral communications would not be intercepted under the circumstances presented in this case." *Id.* The Court further concluded that, owing to the ubiquity of nanny cams, it was not objectively reasonable for someone in Mason's position to have a justifiable expectation that their communications were not subject to interception in a child's bedroom. *Id.* at 1081-82. The Court thus held that Mason had not demonstrated that her intercepted communications constituted "oral communications" subject to the Wiretap Act's protections. *Id.*

Generally, "an individual must feel secure in [her] ability to hold a private conversation within the four walls of [her] home," a location where the

- 10 -

individual "may legitimately expect the highest degree of privacy known to our society." **Commonwealth v. Brion**, 652 A.2d 287, 289 (Pa. 1994) (citation omitted). Thus, under normal circumstances, an individual may reasonably expect that her words spoken at home are not subject to interception, and any interception may potentially run afoul of the Wiretap Act. **See, e.g., Commonwealth v. Myers**, 676 A.2d 662, 663, 665 (Pa. Super. 1996) (holding that, where defendant was seated inside his rural home and was conversing with his friend standing on the porch just outside the front door, defendant had reasonable expectation of non-interception under Wiretap Act). However, an individual's otherwise reasonable expectation as to the privacy of their conversations breaks down when they are on notice that their conversations are subject to interception. **See Commonwealth v. Baumhammers**, 960 A.2d 59, 79 (Pa. 2008) (inmate's privacy rights were not infringed under the Wiretap Act based upon interception of his telephone conversation where, in spite of the fact that the inmate was not provided with written notice of recording by the institution as required by the statute, he was "actually aware" that the conversation was being recorded); **Commonwealth v. Diego**, 119 A.3d 370, 377 (Pa. Super. 2015) (individual lacks a reasonable expectation of privacy over communications when she "knew, or should have known, that the conversation was recorded"); **Commonwealth v. McIvor**, 670 A.2d 697, 700 (Pa. Super. 1996) (*en banc*) (while an individual would normally have an expectation that her conversations with her physician would not be recorded, she would lose the

expectation of non-interception if she knew "from past experience that the doctor often carries a small tape recorder in a pocket to record patient interviews"); ***see also Byrd***, 235 A.3d at 319-20 (mutual consent exception to Wiretap Act, 18 Pa.C.S. § 5704(4), applies where a reasonably intelligent person knew or should have known that their conversation was being recorded).

Here, the record at the suppression record demonstrates that Appellant had actual notice that N.B. may have been recording their conversation. At the beginning of the conversation, the following exchange occurred:

[Appellant]: What's that?

[N.B.]: My phone.

[Appellant]: What are you doing over there?

[N.B.]: Nothing.  Checking something on my --

[Appellant]: Are you trying to record me?

[N.B.]: I am not recording.  I am not.  I am not recording.

Commonwealth Trial Exhibit 4B at 2.[7]  Shortly thereafter, while in mid-discussion concerning N.B.'s upcoming forensic interview, Appellant again asked N.B. "how do I know you are not taping me?" ***Id.*** at 5-6.  N.B. denied that he was recording the conversation, and Appellant speculated that N.B.

---

[7] We refer to the transcript of N.B.'s recorded conversation with Appellant, which was admitted as an exhibit at trial; the complete recording of the conversation was submitted at the suppression hearing and at trial. ***See*** N.T., 9/24/20, at 25-26 (Appellant and Commonwealth jointly submitting full recording to suppression court for its review); Commonwealth Trial Exhibit 4A.

"might be taping me" and directed him to "put [the phone] on the table there." *Id.* at 6. Finally, towards the end of the conversation, Appellant interrupted herself to raise the possibility for a third time that N.B. was recording her comments:

> [Appellant]: . . . If they say -- you better not be taping me.
> [N.B.]: I am not taping you.

*Id.* at 67-68.

Appellant's unprompted questions to N.B. about whether he was "taping" her indicate that she, at the very least, suspected, from the very outset of the conversation, that N.B. was recording her via his cell phone. *See Commonwealth v. Schafkopf*, No. 108 WDA 2021, 2021 WL 5984152, *6 (Pa. Super. filed December 17, 2021) (unpublished memorandum) ("It is the circumstances that exist when an exchange commences which are most relevant to the objective expectations of privacy and non-interception."); *see also* Pa.R.A.P. 126(b) (non-precedential decisions after May 1, 2019 may be relied on for their persuasive value). These doubts persisted throughout the conversation as evidenced by the fact that Appellant asked N.B. two additional times whether he was recording her in spite of his repeated denials. Therefore, while the conversation occurred in a location where participants may normally expect that they will not be intercepted, the evidence was insufficient to show that, under the present circumstances, Appellant "possessed an expectation that the communication would not be intercepted," let alone whether any expectation that she did possess would be "justifiable

under the circumstances." ***Mason***, 247 A.3d at 1081. Pursuant to ***Mason***, Appellant bore the burden of establishing her expectation of non-interception in order to prevail on a motion to exclude an oral communication under the Wiretap Act. ***Id.*** Because no evidence was presented at the suppression hearing that touched upon Appellant's subjective expectation and there was evidence that she believed the conversation was potentially being recorded, Appellant did not meet her burden. We accordingly affirm the denial of Appellant's suppression motion.

We next turn to Appellant's argument that the evidence was insufficient to prove that she committed intimidation, retaliation, or obstruction in child abuse cases. Appellant challenges only the Commonwealth's proof on the issue of whether she intimidated or attempted to intimidate N.B. and X.B. into providing false information related to a child abuse investigation. Appellant asserts that the evidence only showed her attempts to **persuade** her grandsons to give fabricated statements, rather than any attempt to **intimidate** them. She notes that N.B. testified that he never felt scared or threatened during their conversation and that the content and tone of the recording revealed that it was a pleasant and jocular, not menacing, exchange. Appellant argues that her conviction of intimidating X.B. was particularly infirm, as his testimony "was brief, vague, and riddled with frequent failures to recall what [Appellant] said or how she said it." Appellant's Brief at 29.

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020). When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Id.*** "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Bowens***, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." ***Id.*** (citation omitted). Finally, we note that the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. ***Id.*** at 741.

Appellant was convicted of two counts of intimidation, retaliation, or obstruction in child abuse cases under Section 4958(a)(2)(iii) of the Crimes Code, which provides as follows:

> **(a) Intimidation.**--A person commits an offense if:
>
> > (1) The person has knowledge or intends that the person's conduct under paragraph (2) will obstruct, impede, impair, prevent or interfere with the making of a child abuse report or the conducting of an investigation into suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services) or prosecuting a child abuse case.

(2) The person intimidates or attempts to intimidate any reporter, victim or witness to engage in any of the following actions:

* * *

(iii) Give false or misleading information, documentation, testimony or evidence to any person regarding a child abuse investigation or proceeding.

18 Pa.C.S. § 4958(a)(1), (2)(iii).[8]   Appellant does not challenge the Commonwealth's proof as to the requisite *mens rea* to obstruct, impede, impair, or interfere with a child abuse investigation under Section 4958(a) or that she requested that X.B. and N.B. "[g]ive false or misleading information, documentation, testimony or evidence" to any person in connection with the investigation. *Id.*  Instead, as stated above, Appellant only argues that the Commonwealth did not show that she "intimidate[d] or attempt[ed] to intimidate" them into giving the false information.  18 Pa.C.S. § 4958(a)(2).

The intimidation element of Section 4958(a) is not addressed in the published caselaw of this Commonwealth.  However, virtually identical language appears in Section 4952, pertaining to the offense of intimidation of witnesses or victims.  18 Pa.C.S. § 4952(a) ("A person commits an offense if . . . he intimidates or attempts to intimidate any witness or victim to . . .").  In interpreting that provision, courts have held that actual intimidation is not required under the statute but instead an attempt to intimidate, coupled with

_____

[8] Although the statute is titled intimidation, retaliation, or obstruction in child abuse cases, Appellant was charged under subsection (a) related to intimidation, while the retaliation and obstruction provisions appear under subsections (b) and (b.1).  *See* 18 Pa.C.S. § 4958(a)-(b.1).

the necessary *mens rea*, is sufficient. **See Commonwealth v. Lynch**, 72 A.3d 706, 710 (Pa. Super. 2013) (*en banc*); **Commonwealth v. Collington**, 615 A.2d 769, 770 (Pa. Super. 1992).

Our Supreme Court has explained:

Clearly, intimidation may be accomplished with no words at all, for a mere look or posture can bully, threaten, coerce, frighten, or intimidate beyond question. **See, e.g.**, Clint Eastwood. It is equally true that an offer of benefit can be presented in such a Machiavellian manner as to contain an unarticulated act of intimidation. **See, e.g.**, The Godfather (Paramount Pictures 1972) ("I'm gonna make him an offer he can't refuse."). Indeed, one need not go to the movies to understand that people may purposely intimidate in any number of ways, without manifesting bullying or fearsome words, and if they do so with the requisite *mens rea*, the crime is made out.

**Commonwealth v. Doughty**, 126 A.3d 951, 957 (Pa. 2015). Intimidation must be assessed under the totality of the circumstances and based upon the nature of the relationship between the parties, including prior physical abuse or history of threats. **Id.** at 957-58; **Commonwealth v. Von Evans**, 163 A.3d 980, 984-85 (Pa. Super. 2017); **Lynch**, 72 A.3d at 709-11.

Examining first the evidence relative to the charge for intimidating N.B., we conclude that the evidence was sufficient to sustain this conviction. N.B. testified at trial that prior to his July 31, 2019 CAC forensic interview, he had several one-on-one conversations with Appellant in which she "told [him] what to say." N.T. Trial at 150-52, 167. N.B. stated that Appellant did not threaten him during the conversations and that he was not scared of her, but she did state that she would potentially lose her job or license if he failed to make

false statements at the forensic interview. *Id.* at 167-70, 175-76. N.B. testified that he recorded one of these conversations and provided his phone to an officer during his forensic interview so that they could extract the conversation. *Id.* at 152-54.

N.B.'s recording was played in its entirety at trial. *Id.* at 154-64; Commonwealth Trial Exhibits 4A, 4B. During the recorded conversation, which N.B. stated lasted over three hours despite the fact that only a little over one hour was recorded, N.T. Trial at 166, Appellant can be heard repeatedly asking N.B. to make false statements in response to hypothetical questions that might be asked at the forensic interview, with the conversation often switching back and forth between a discussion of what actually happened and the fabrications that N.B. would tell the interviewers. *See, e.g.*, Commonwealth Trial Exhibit 4B at 9, 19 (Appellant stating that they were "going to do fake answers and real answers" and N.B. stating that "it's like a quiz" where he would provide the "[h]onest answer" and then the "fake" one). The principal misrepresentations that Appellant requested N.B. make related to the allegations that Appellant physically disciplined her grandchildren with a stick and that N.B.'s older relative, D., sexually abused X.B. *Id.* at 6-11, 13-29, 46-50, 55-58, 66, 70-71; N.T. Trial at 160. Related to the latter allegation, N.B. testified at trial that he personally observed X.B. and D. engage in "sexual stuff" two times in the year prior to the recorded conversation, but Appellant told him "to say it didn't happen." N.T. Trial at 156-60.

As Appellant points out in her brief, the conversation with N.B. did not contain "bullying or fearsome words," ***Doughty***, 126 A.3d at 957, yet a close reading of the transcript reveals less overt forms of manipulation. For example, Appellant invoked the family's religious beliefs in conjunction with her efforts to shape N.B.'s story for the forensic interview, implying that anyone who spoke ill of a family member—Appellant directed this to concerns that N.B. would speak negatively about D.—would be looked on unfavorably by God. Commonwealth Trial Exhibit 4B at 24-25. Appellant repeatedly discussed the actions York County Children, Youth, and Families could take if the allegations of abuse were substantiated through N.B.'s statements at the forensic interview, including concerns that the agency would want the family to take classes or attend therapy or that N.B. would also be removed from the home and would not be able to live with either Appellant or his other grandmother. ***Id.*** at 23, 28, 58, 78-80. Appellant also mentioned to N.B. her concerns that his testimony would lead to D. being labeled a rapist and potentially face imprisonment. ***Id.*** at 11. In light of these various statements indicating the potential harms that would befall N.B. and the family and considering the circumstances regarding Appellant's status as N.B.'s adopted guardian and caregiver, N.T. Trial at 170, we conclude that the evidence was sufficient to allow the jury to infer that Appellant attempted to intimidate N.B. into making false statements during the forensic interview. ***See Doughty***, 126 A.3d at 958 (jury properly inferred intent to intimidate his wife into not testifying in his trial for previously assaulting her when he berated, pleaded,

and begged his wife into not testifying against her and in light of his history of threatening behavior towards her); *Lynch*, 72 A.3d at 709-11 (sufficient evidence that defendant intimidated his romantic partner into not testifying at his trial for assaulting her where defendant offered partner a pecuniary benefit for not testifying and made numerous requests, particularly in light of the closeness of the relationship and the brutal nature of underlying assault).

While we conclude that the evidence was sufficient as to the conviction of N.B., we cannot say the same with respect to the charge of intimidating X.B. into giving false statements. As Appellant points out in her brief, X.B.'s testimony at trial was brief and lacking in any specifics regarding his conversations with Appellant. On direct examination, X.B. initially denied that Appellant attempted to coach his interview in connection with the child abuse investigation and then admitted only that Appellant asked him to not make certain statements to the interviewers. N.T. Trial at 110-11. After having his recollection refreshed by reviewing the July 29, 2019 forensic interview report, X.B. eventually identified one issue that Appellant asked him to lie about, which was to say that "[w]hat happened in the house" with one of the other children, was his fault.[9] *Id.* at 111-13, 115, 117-18. When asked what reason Appellant had for asking him to claim fault for the events that transpired at the house, X.B. stated that he assumed that it was because Appellant wanted

_____

[9] X.B. stated that he did not want to discuss the events that happened at the house, N.T. Trial at 118, but presumably this relates to the sexual abuse allegations with his older family member, D.

the investigation and related proceedings to "be over with quickly." *Id.* at 115-16. X.B. did not want to claim fault for what happened at the house, but he did not remember Appellant advising him of consequences if he did not do so. *Id.* at 117. X.B. testified that he recalled one conversation with Appellant lasting five to ten minutes, although he allowed that there may have been two conversations, and he could not recall where the conversation or conversations occurred. *Id.* at 110, 115-17.

On cross-examination, X.B. stated that he did not remember the words that Appellant used during their conversation, that he did not recall her threatening him, and that he would have remembered if she had done so. *Id.* at 121-22. X.B. testified that he was not afraid that Appellant would take any action if he did not stick to her story. *Id.* at 122. He also stated that the conversation occurred approximately one week after he was removed from her home. *Id.* at 121.

Unlike with N.B., the evidence adduced at trial related to Appellant's interactions with X.B. is not sufficient to support a finding that she intimidated or attempted to intimidate him. While Appellant asked X.B. to make at least one false statement regarding the sexual abuse allegations, there is no evidence regarding the exact words Appellant used in making this request, her tone of voice or accompanying gestures, or whether she made any overt or implied attempts to threaten, coerce, or apply psychological pressure on X.B. Furthermore, the record is bereft of any indication that X.B. felt intimidated; he denied that Appellant threatened him or that he felt afraid,

and there is no evidence that he made any false statements at his CAC interview. There is no indication that Appellant ever stated that she would discipline X.B., whether physically or otherwise, if he did not obey her request to lie to the interviewers. The record also reflects only one or perhaps two five-to-ten-minute conversations concerning X.B.'s statements at the forensic interviews, rather than the hours-long conversation between Appellant and N.B. or the repeated requests found to be intimidating in other cases. *See* *Lynch*, 72 A.3d at 709-11. Moreover, while Appellant also held an authority figure role over X.B. as his adopted guardian from an early age, N.T. Trial at 107, 119, we cannot say that this power balance alone could lead to a determination that Appellant intimidated or attempted to intimidate him.

In asserting that the evidence was sufficient to support the conviction of X.B., both the trial court in its Rule 1925(a) opinion and the Commonwealth in its brief treat the evidence related to the two victims together, relying on N.B.'s testimony and the contents of the recorded conversation as supporting the convictions on both counts of the intimidation offense. *See* Trial Court Opinion, 9/6/22, at 5-6; Commonwealth Brief at 17-18. However, the contents of Appellant's conversations with N.B. cannot be used to support Appellant's conviction for intimidating X.B. X.B. was not present during those

conversations, he was not living in Appellant's home at the time, and there is no indication that N.B. shared with X.B what guidance Appellant gave him.[10]

Accordingly, we conclude that the evidence was insufficient to support Appellant's conviction for the count of intimidation, retaliation, or obstruction in child abuse cases related to X.B. We therefore reverse that conviction, while also affirming Appellant's other conviction for intimidating N.B. Appellant raises one additional issue pertaining to the discretionary aspect of her sentence, arguing that the trial court did not fully consider her serious cognitive injury and rehabilitative needs at sentencing. However, because our ruling vacating one of Appellant's two consecutive sentences upsets the trial court's sentencing scheme, we remand for resentencing, and we need not reach Appellant's final issue. *See Commonwealth v. Vela-Garrett*, 251 A.3d 811, 819 (Pa. Super. 2021) (concluding that vacating a sentence imposed to run consecutively to other undisturbed sentences disrupted sentence scheme and remand for imposition of new sentence was required).

---

[10] The only evidence concerning X.B.'s knowledge of Appellant's conversations with N.B. is X.B.'s testimony that he understood that Appellant had "talked to [N.B.] and told him he was telling the truth." N.T. Trial at 115.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/31/2023